EDWIN R. HOLCOMBE *vs.* ELLEN B. RICHARDS and Husband.

December 23, 1887.

Mortgage — Foreclosure by Foreign Administrator under Power of Sale—Power Contractual, and not Statutory.—Where a mortgage of lands in this state, given to secure a debt due to the mortgagee residing in another state, contained a power to the mortgagee, *his executors, administrators,* or assigns, in case of default of the conditions of the mortgage, to sell and convey the premises according to the statute in such case made and provided, the power of sale might be exercised by the administrator appointed by the probate court in the state where the mortgagee resided, even prior to the enactment of Laws 1876, *c.* 41, (Gen. St. 1878, *c.* 81, § 25.) The exercise of such power rested upon the convention of the parties, as expressed in the mortgage, and not upon the authority of the probate court of the other state. The statute referred to was not a grant of authority, but a mere regulation as to the manner of its exercise.

Deed—Delivery to Beneficiary not named as Grantee.—A delivery of a deed to the real beneficiary of the grant, or the person to whose benefit it will inure, is good, without any delivery to the person named as grantee in the deed. Hence, when a deed to A. will inure to the benefit of B., by reason of covenants of title or particular recitals in a former deed from A. to B. of the same premises, the delivery to B. of a curative deed running to A., as grantee, will be good without any delivery to A.

Plaintiff brought this action in the district court for Ramsey county, to determine the adverse claims of the defendants to certain lands. The action was tried, without a jury, by *Wilkin,* J., who ordered

judgment for defendants. Plaintiff appeals from an order refusing a new trial.

In addition to the facts recited by the court in its opinion, it appeared that the sheriff's affidavit of sale made to Charles Hayward, upon the foreclosure of the Maltby mortgage, stated that, at the time of the sale, "came and appeared Charles Hayward, of Bangor in the state of Maine, trustee, etc., and offered and bid * * * for and upon said mortgaged lands * * * the sum of $3,500, * * * and he was declared by me the purchaser thereof, in trust for the creditors of the late John Maltby, mortgagee, in proportion to the amounts which may be allowed to them by commissioners of insolvency against said estate." The sheriff's certificate of sale recited that the sheriff did offer and expose the land for sale at the time and place designated in the notice of sale, "when and where came and appeared Charles Hayward, of Bangor in the state of Maine, trustee, etc., and offered and bid upon said mortgaged lands, to wit, * * * and he was declared the purchaser thereof, in trust for the creditors of the estate of the late John Maltby, mortgagee, in proportion to the amounts which may be allowed them by commissioners of insolvency against said estate; and I further certify that the said sale will become absolute, and that the said Charles Hayward, his heirs and assigns, will be entitled to a deed of conveyance of said land and premises in one year from this date." The sheriff's deed, made after the expiration of the time for redemption, recited that it was made between Daniel A. Robertson, sheriff, as party of the first part, and "Charles Hayward, trustee, as party of the second part;" it also recited the sale on March 22, 1862, to "Charles Hayward of Bangor, Maine, trustee," and granted and conveyed the property "unto the said party of the second part, his heirs and assigns forever." In the conveyance by Hayward and wife in October, 1863, to William C. Stiles, Hayward was described as "Charles Hayward, trustee."

*H. L. Williams,* for appellant.

*W. D. Cornish,* for respondents.

MITCHELL, J. Action to determine adverse claims to real property. Both parties claim under Edwin V. Holcombe as their common source

of title.   The history of the title, as far as here important, is as follows:   September 9, 1859, Edwin V. Holcombe and wife, to secure the payment of a note for $5,000, executed a mortgage upon 40 acres of land in Ramsey county, in this state, to one John Maltby, a citizen of Penobscot county, and state of Maine.   This mortgage contained a power of sale, authorizing Maltby, "his heirs, *executors, administrators,* and assigns," in case of default in the conditions of the mortgage, to sell the mortgaged premises at public sale, and convey the same to the purchaser.   Maltby died at his residence in Maine in May, 1860, the note and mortgage referred to being then in his possession in that state.   After his death, proceedings for the due administration of his estate were had in the probate court of Penobscot county, in which letters of administration were duly issued to his widow, who subsequently resigned, and one Reuben A. Prescott was by the same court appointed administrator *de bonis non* in May, 1861. Default having been made in the conditions of the mortgage, Prescott, as such administrator, proceeded to foreclose by advertisement under the power of sale, and the premises were sold at public auction by the sheriff of Ramsey county, on March 22, 1862, to Charles Hayward, for the sum of $3,500, and the usual certificate of sale issued to him, dated the 24th of the same month.   The premises not having been redeemed, a sheriff's deed was executed to Hayward after the expiration of the time of redemption.

In October, 1863, Hayward and wife, by deed, "sold, remised, released, and forever quitclaimed" the premises to William C. Stiles, his heirs and assigns, forever.   This deed contained, immediately following the description of the land, the following recitals and covenant of non-claim:   "Being the same premises conveyed in the mortgage by Edwin V. Holcombe and wife to John Maltby, bearing date the ninth day of September, 1859, and recorded, [giving date and place of record;] *the same having been sold for foreclosure by the sheriff of said county* on the twenty-second of March, 1862, as per certificate by the sheriff, bearing date the twenty-fourth of said March, and recorded, [giving date and place of record;] *the said Hayward being the purchaser at said sale, and the said premises having since been conveyed to him in pursuance thereof.*"   "To have and to hold the prem-

ises, with all the privileges and appurtenances thereof, to him, the said William C. Stiles, his heirs and assigns, forever, *so that neither we, the said Hayward and wife, or either of us, nor any person claiming from, by, through, or under us, or either of us, shall have or claim any right or title to said premises, or any part thereof.*"

By deeds from Stiles and various mesne conveyances under him, the land was conveyed in different parcels to numerous persons, (having been laid out and platted into town lots,) among whom were the defendant and one Bryant. Some of these owners having been advised by men learned in the law that there was some doubt as to the validity of the foreclosure of the Holcombe mortgage, they applied to the plaintiff to obtain for them from Edwin V. Holcombe (his father) a curative deed, quitclaiming to their common remote grantor, Charles Hayward, all interest in the land. They prepared and furnished plaintiff a deed of that purport, which he sent to his father. The father executed it, and returned it to his son, who, at the request and with the consent of his father, delivered it to Bryant in January, 1884, who, for the benefit of all the owners, had it recorded, but not until July, 1885. Hayward, however, had no personal knowledge of the deed until August, 1885, soon after which he executed to Stiles a deed, for the purpose of vesting in him all the interest in the land conveyed by this curative deed from Edwin V. Holcombe. Intervening between the delivery to Bryant of the curative deed to Hayward and the actual acceptance of it by Hayward, Edwin V. Holcombe, in June, 1885, executed to his son, the plaintiff, quitclaim deeds of the same premises, which are the conveyances under which he now claims. The court finds (and the evidence abundantly supports him) that plaintiff paid no consideration for these deeds, and that at the time he received them he had full notice and knowledge of all the conveyances and proceedings affecting the title to this land, and particularly of the curative deed executed by his father to Hayward, already referred to, and of the reason of *its* execution and delivery.

Passing by a point made as to the regularity of Prescott's appointment as administrator of the estate of Maltby, and another as to the validity of the title acquired by Hayward at the mortgage sale, by reason of his being described in the certificate of sale as "trustee,

etc.," (neither of which, in our opinion, are well taken,) plaintiff's grounds of attack on defendants' title are two : *First,* that the fore-closure of the Holcombe mortgage by Prescott, under the power of sale, was void, for the reason that a foreign administrator had no such authority in this state prior to the passage of Laws 1876, *c.* 41, (Gen. St. 1878, *c.* 81, § 25;) *second,* that the curative deed from Edwin V. Holcombe to Hayward, as grantee, could not take effect as a conveyance until its acceptance by him; that until such acceptance, the title remained in and was subject to disposition by the grantor, and hence that the intervening conveyance from Edwin V. Holcombe to plaintiff took precedence.   We shall consider these in their order.

1. It is true, as contended by appellant, that our courts take no notice of a foreign administration, and will not recognize a foreign administrator or executor in his representative capacity until clothed with authority under our laws.   But the exercise of the power of sale by Prescott rested upon the convention of the parties, and not upon the authority of the probate court in Maine.   It was a matter of contract, and not of jurisdiction.   The mortgage authorized the exercise of the power of sale by the mortgagee, or his *executors or administra-tors.*   This description of the persons who might exercise this power fully covers personal representatives appointed at the domicile of the mortgagee, and where the principal administration of his estate must be had.   The note and mortgage were *bona notabilia* in the state where the mortgagee resided, and were the proper subject of administration in that state, although the mortgaged premises were situated in this state.   Neither did he hold by assignment, within the meaning of Gen. St. 1878, *c.* 81, § 2, and hence the provision of the statute requiring all assignments to be recorded has no application.   The act of 1876 is therefore not a grant of authority to a foreign executor or administrator to exercise the power of sale in a mortgage, but merely regulates its exercise by requiring, for manifestly wise reasons, as a condition precedent, that evidence of the fact of his appointment should be first made a matter of record in this state.   *Doolittle* v. *Lewis,* 7 John. Ch. 45, (11 Am. Dec. 389;) *Hayes* v. *Frey,* 54 Wis. 503, (11 N. W. Rep. 695.)

The foreclosure was therefore, in our judgment, valid, and upon that ground alone the order of the court below might be affirmed.

2. It is also sustainable upon the effect of the curative deed from Edwin V. Holcombe to Hayward. Counsel on both sides have dis-·cussed at considerable length the question as to whether a deed delivered by the grantor, without the grantee's knowledge, to a third person not authorized by the grantee to receive it, takes effect as a grant from the date of such delivery, or only upon its acceptance by the grantee. In England, ever since the doctrine maintained by Justice Ventris in *Thompson* v. *Leach*, 2 Vent. 198, was established by the decision of the house of lords, the law seems to be settled there that an unconditional delivery of a deed to a third person, for the use of the person named as grantee, although the latter has no knowledge of it, and has given such third person no actual authority to receive it, takes effect and vests title the instant it is so delivered, and that the subsequent rejection of it by the grantee reinvests the title in the grantor, or, as Lord Coke puts it, "if A makes an obligation to B, and delivers it to C to the use of B, this is the deed of A presently; but if C offers it to B, there B may refuse it *in pais*, and thereby the obligation will lose its force. * * * The same law of a gift of goods and chattels: if the deed be delivered to the use of the donee, the goods and chattels are in the donee presently before *notice or agreement;* but the donee may make refusal *in pais*, and by that the property will be divested." *Butler & Baker's Case*, 3 Rep. 25; *Garnons* v. *Knight*, 8 Dowl. & R. 348.

In this country there is much conflict of opinion upon the question; some of the authorities adopting the above rule, or, if admitting that an acceptance by the grantee is necessary, holding that such acceptance will be presumed from the beneficial nature of the grant, and that this is not a presumption of evidence that may be rebutted by merely showing that the grantee never in fact knew of the deed, but a presumption of law that cannot be overthrown except by affirmative proof that he did know of it and rejected it. On the other hand, many cases combat this doctrine very earnestly, holding that an actual acceptance is essential to a delivery, and that the deed only takes effect as a grant from the date of such acceptance, until

which the estate remains in the grantor, and is subject to his disposal; that while, when the deed is finally accepted, it may, in some ·cases, in order to uphold it, be deemed, as between the parties, to have taken effect, by relation, as of the date of the first delivery, yet this can never be done where the rights of third parties have inter--vened. Among numerous cases upon this question, the subject will be found quite exhaustively discussed in the following: *Hulick* v. .*Scovil*, 4 Gilman, 159; *Mitchell* v. *Ryan*, 3 Ohio St. 377; *Welch* v. .*Sackett*, 12 Wis. 243; *Hibberd* v. *Smith*, 67 Cal. 547, (4 Pac. Rep. 473, .and 8 Pac. Rep. 46.) The question has never been decided in this .state; what is said on the subject in *Comer* v. *Baldwin*, 16 Minn. 151, (172,) being really *obiter*, as the delivery in that case was merely for ·*examination*.

It is not necessary to decide here the effect of a delivery to a third ·person, who is a stranger to the property conveyed by the deed. ·The delivery of this curative deed to Bryant was good, upon the ground that a delivery of a deed to the real beneficiary of the grant, or to the person to whose benefit it will inure, is sufficient without any delivery to the person named as grantee in the instrument. It is held that a delivery to a *cestui que trust* is sufficient without any delivery ·to the trustee; the possession of the deed by the former being in legal effect the possession of the latter. *Souverbye* v. *Arden*, .1 John. ·Ch. 240; *Jacques* v. *Methodist Church*, 17 John. 548, 577, (8 Am. Dec. 447;) *Morrison* v. *Kelly*, 22 Ill. 610, (74 Am. Dec. 169.) Upon ·principle, the same rule must apply when a deed to A will inure to the benefit of B, upon the ground of estoppel by reason of covenants ·of title or particular recitals in a prior deed of the same premises ·from the former to the latter.

The deed from Hayward to Stiles contains a covenant of non-claim ·of the form in common use in New England. According to the weight of authority, this would estop Hayward from asserting against Stiles or his grantees any claim to the premises under the curative deed from Holcombe. *Kimball* v. *Blaisdell*, 5 N. H. 533, (22 Am. Dec. 476;) *Trull* v. *Eastman*, 3 Met. 121, (37 Am. Dec. 126;) *Newcomb* v. *Presbrey*, 8 Met. 406; *Gibbs* v. *Thayer*, 6 Cush. 30; *Holbrook* v. *Debo*, 99 Ill. 372; *Gee* v. *Moore*, 14 Cal. 472. In Maine, however,

it is held that a covenant of non-claim does not estop the party from asserting subsequently-acquired title, unless by doing so he would be denying or contradicting some fact alleged in his former deed. *Pike* v. *Galvin,* 29 Me. 183. But whatever might be the effect of this covenant standing alone, there can be no doubt on that point when it is taken in connection with recitals in the deed. A party may be as effectually estopped by particular recitals in his deed as by covenants of title, where the facts recited are material to and of the essence of the contract; that is, when, unless the facts existed, it is to be presumed that the contract would not have been made; the matter recited being presumably taken as the basis of the action of the parties. Bigelow, Estoppel, *c.* 10; Herman, Estoppel, *c.* 9.

The deed from Hayward to Stiles conveyed the premises, and not merely the grantor's then present interest in them. After reciting that the premises conveyed were the same that were mortgaged by Holcombe to Maltby, it further recites as facts that *the same had been sold on foreclosure of the mortgage; that Hayward was the purchaser at the sale; and that the premises were subsequently conveyed to him in pursuance thereof;* thus stating how his title was acquired, and reciting certain things as facts in reference to the manner of acquiring it, which, within the rule already referred to, he would be estopped from denying. But if Hayward were to assert title under this curative deed from Holcombe, he would not only be claiming the very estate which he had assumed to convey to Stiles, but, in effect, denying the recitals in his own deed; for only upon the hypothesis that this sale on foreclosure, and the purchase by him, and conveyance thereunder, had not occurred, or were illegal, could he have acquired any interest in the premises under the curative deed. This he is estopped from doing, and consequently any interest in the premises acquired by him under this curative deed would inure wholly to the benefit of Stiles, and those holding under him. Hence, upon the principle already referred to, delivery of the deed to them, or either of them, was a good delivery, and it became the deed of the grantor presently, although Hayward, the person named as grantee, had no knowledge of it. Had he known of it, he would have had neither the power nor legal right to refuse to accept, because it merely accom-

plished what was his legal duty to do, viz., to perfect the title which he had assumed to convey to Stiles. When a defect is discovered in the common source of title of a tract of land, which has passed by mesne conveyances into the hands of various parties, and where title subsequently acquired by their common grantor would, under the covenants or recitals in his deed, inure to their benefit, it is a very common and convenient practice for them to perfect their title by procuring a curative deed to their common grantor, without his having any knowledge of it. Upon both principle and considerations of public policy the delivery of such a deed to any of the parties interested in the property, and to whose benefit it inures, should be held a good delivery. Hence, upon either or both grounds, the decision of the court below was right.

Order affirmed.