Decided at PENDLETON, July 18, 1896.

## TYLER *v.* CATE.
[45 Pac. 800.]

29 515
42 556

29 515
48 233

ESCROW.— The essential feature of an escrow is that it is deposited with a stranger to hold until the performance of some condition, and if it is delivered without compliance with that condition no title will thereby be conveyed to the grantee.

From Grant: MORTON D. CLIFFORD, Judge.

This is a suit by A. Tyler against James Cate and B. F. Grant to quiet the title to real property, and to enjoin a trespass thereon. The material facts are that the defendant James Cate, claiming to be in possession under the mineral laws of the

United States of the northwest quarter of the southwest quarter of section thirty-five, in township seven, south of range thirty-five and one half east of the Willamette Meridian, in Grant County, and being the owner of a ditch and water right appurtenant thereto, listed the same for sale with one E. S. McComas, a real estate agent, agreeing to take one thousand five hundred dollars therefor, one half to be paid at the time of sale, and the remainder in one year from that date, with interest thereon at ten per cent. per annum, the deferred payment to be secured by a mortgage on the property. McComas, by representing to the plaintiff and one D. W. Lichtenthaler that said land was valuable for its placer mines, the gold from which could be extracted by means of the water carried in the ditch, and that the property could be purchased for five thousand dollars, at which price it would prove a profitable investment, induced them to enter into a contract with him to organize a corporation to be known as the Ganite Gravel Mining and Ditch Company, of which Lichtenthaler was to be president, and it was also agreed that the plaintiff should examine the property, and, if found to be as represented, he was authorized to purchase it at the latter figure. In pursuance of this agreement, McComas and the plaintiff examined the property, and, upon the latter's report that it was as represented, Lichtenthaler sent seven hundred and fifty dollars to be paid to the defendant on account of the purchase. On July fifth, eighteen hundred and ninety-four, the defendant Cate, for the expressed

consideration of five thousand dollars, made to Lichtenthaler a quitclaim deed of said. ditch and water right and all his interest in the placer mines lying under said ditch, and on the twelfth of said month, upon the representation of McComas that said corporation would be duly organized in about fifteen days, and the receipt of the money so sent by Lichtenthaler, gave the deed to McComas, with instructions to deliver it to Lichtenthaler when the mortgage to secure the deferred payment had been properly executed by the corporation. Although the defendant received only seven hundred and fifty dollars, he gave McComas a receipt acknowledging the payment of three thousand dollars, and McComas and the plaintiff gave Cate a written memorandum, agreeing that the corporation, when organized, would execute its several notes, amounting to two thousand dollars, and secure the same by a mortgage on the property, and the defendant, by a written memorandum, assigned to McComas all said notes, except one for seven hundred and fifty dollars. Cate thereupon surrendered to McComas and the plaintiff the possession of the property, which they held until August twenty-seventh of that year, when Lichtenthaler, being informed that McComas was to receive a commission of three thousand five hundred dollars on account of the sale, and having examined the property, and being dissatisfied therewith, refused to organize the corporation, whereupon McComas, by a written order, appointed Cate superintendent of the mines and instructed him to hold possession of the property

until he had received the balance due under the agreement, and in pursuance thereof the defendant immediately took possession of the same. About November thirtieth, eighteen hundred and ninety-four, Cate notified the plaintiff, McComas, and Lichtenthaler that he had rescinded the contract of sale, and requested the return of his deed, but they neglected to comply therewith. On December twenty-fourth, eighteen hundred and ninety-four, McComas executed to the plaintiff a quitclaim deed of all his interest in the property, and on May twenty-first, eighteen hundred and ninety-five, Lichtenthaler executed to the plaintiff a similar deed, both which were duly recorded on May twenty-fourth, eighteen hundred and ninety-five. On May second of that year the defendant Cate gave one H. J. Grant a bond for a deed, agreeing to convey the said property on or before November first, eighteen hundred and ninety-six, upon the payment of four thousand dollars, and in pursuance thereof the codefendant, B. F. Grant, as the agent of the obligee therein, took possession of the premises, and has been extracting the mineral therefrom.

The plaintiff alleges that he is the owner and in the possession and entitled to the sole and exclusive use of said ditch and water right, and also the placer mines situated in sections 34, 35, and 36 in said township and range, particularly describing the same; that in April, eighteen hundred and ninety-five, the defendants wrongfully diverted the waters of said ditch, and appropriated the same to their own use, and also wrongfully entered upon

said mining ground, and dug up and removed the gold and other mineral contained therein, and prays for the relief hereinbefore stated. The defendants, after denying the material allegations of the complaint, allege, in substance, that the title to the premises never passed to Lichtenthaler; that time was of the essence of the contract, and that, by reason of the failure to organize the corporation, the contract to sell the premises had become forfeited, and was, upon notice, rescinded, that the deed to Lichtenthaler and his deed and that of McComas to the plaintiff were clouds upon the title; and pray that the said deeds may be annulled and held for naught. A reply having put in issue the allegations of new matter contained in the answer, the cause was referred and the evidence taken, from which the court found the facts in substance as above detailed, and decreed a cancellation of the deeds upon the repayment of the seven hundred and fifty dollars with interest thereon, and the further payment of five hundred and seventy dollars, expended by the plaintiff in making permanent improvements upon the premises, and that neither party should recover costs or disbursements, from which decree the plaintiff appeals, and the defendant Cate also appeals from that part of it which requires the return of the money received and payment for improvements.          MODIFIED.

For appellant there was a brief and an oral argument by *Mr. Jasper J. Johnson.*

For respondents there was a brief by *Messrs. William Smith* and *Sam White,* with an oral argument by *Mr. Smith.*

Opinion by MR. JUSTICE MOORE.

The counsel for plaintiff contend that the title to the property passed by the delivery of the deed to Lichtenthaler, whether such delivery was induced by fraud or otherwise, and hence such deed was voidable only, and the defendants, not having tendered any amount to the plaintiff as a prerequisite to the cancellation of the deeds, the court was powerless to grant this equitable relief; while the defendants' counsel maintain that the deed to Lichtenthaler was deposited with McComas to be delivered upon the performance of certain conditions, which have never been fulfilled, in consequence of which the deed is void, and no title passed thereby; and that time having been of the essence of the agreement, the defendant had the right to declare the contract forfeited, and retain the amount paid thereunder, together with all the improvements made upon the premises. The important question for consideration is whether the title passed to Lichtenthaler, under whom the plaintiff claims, for, if it was transferred by the deed, Cate could not by any subsequent act impair the validity of the conveyance: Tiedeman on Real Property, § 812. The deed in question was properly executed and acknowledged, and the transfer of the title must therefor depend upon its delivery. "While no specific formalities are necessary

to constitute a delivery," says BEAN, C. J., in *Allen v. Ayer*, 26 Or. 589 (39 Pac. 1), "it is essential that the grantor must consent either expressly or impliedly that the deed shall pass irrevocably from his control." To the same effect see also the opinion of LORD, C. J., in *Fain* v. *Smith*, 14 Or. 82 (12 Pac. 365). The possession of a duly executed deed by the grantee raises a presumption of its delivery, (*Flint* v. *Phipps*, 16 Or. 437, 19 Pac. 543,) but such inference of fact is not conclusive, and, even in a court of law, is susceptible of explanation or rebuttal: *Southern Life Insurance Company* v. *Cole*, 4 Fla. 359; *Kingsbury* v. *Burnside*, 58 Ill. 324 (11 Am. Rep. 67). A deed is a contract which derives its binding force from and becomes operative by the mutual assent of the parties to it, and hence without the acceptance of it by the grantee there can be no delivery: *Wilsey* v. *Dennis*, 44 Barb. 354; *Fonda* v. *Sage*, 46 Barb. 109; *Lessee of Mitchell* v. *Ryan*, 3 Ohio St. 377; *Beardsley* v. *Hilson*, 94 Ga. 50 (20 S. E. 272); *Moore* v. *Flynn*, 25 N. E. 844. It must be admitted, however, that a volutary delivery of a deed to the *cestui que trust*, or even to a person having a beneficial interest in the premises conveyed, by the grantor, with intent to pass the title thereby, is effectual for that purpose, without any formal acceptance by the nominal grantee: *Jacques* v. *Methodist Episcopal Church*, 17 Johns. 549 (8 Am. Dec. 447); *Morrison* v. *Kelley*, 22 Ill. 610 (74 Am. Dec. 169); *Holcombe* v. *Richards*, 38 Minn. 38 (35 N. W. 714); *Richardson* v. *Clow*, 8 Ill. App. 91.

"A delivery of a deed with the intention of pass-
ing the title made to an officer of a corporation,"
says Mr. Devlin in his work on Deeds, § 316, "is a
delivery to the corporation itself, if it be done for
the use and benefit of the corporation. But a deed
may be delivered to an officer of a corporation to
take effect as an escrow, upon the performance of a
condition, as there is no such personal identity be-
tween a corporation and its officers as will prevent
a delivery to the latter as an escrow." It may well
be doubted if Lichtenthaler ever accepted the deed
made to him, unless the execution of his deed to
plaintiff may be construed as such acceptance, for
in a letter written to Cate five months after it was
deposited with McComas, he says that he had never
seen the deed, would not accept it if tendered him,
and, so far as he was concerned, if the deed was in
existence, Cate could treat it as a nullity. But, as-
suming that the execution of his deed was an ac-
ceptance of the Cate deed, the question of delivery
still remains. Upon this question the evidence dis-
closes that Cate did not intend to permit the deed
to pass irrevocably beyond his control until the
condition attached to its deposit had been fully per-
formed. McComas, as a witness for the plaintiff, in
speaking of the grantor's orders in relation to the
final disposition of the deed, given at the time it
was deposited with him, says: "The instructions
were to deliver the deed when the mortgage had
been properly executed for the payment due in one
year." This instruction would render the instru-
ment an escrow, and the subsequent conditions,

upon the performance of which the deposit was predicated, never having been complied with, McComas could not, by delivering the deed to Litchtenthaler, render the conveyance effectual to pass the title, unless the depositary had such an interest in the subject matter as to make the deposit with him equivalent to a delivery to Lichtenthaler. A deed can never be an escrow unless it is delivered to a stranger to hold until the condition is performed, and then to be delivered to the grantee: Tiedeman on Real Property, § 815; *Gaston* v. *Portland*, 16 Or. ·255 (19 Pac. 127). A stranger, within the meaning of this rule, is a person not a party to the deed, (Devlin on Deeds, § 312,) and, as McComas' name did not appear in the deed, it follows that he was not a party thereto. It is true he may have had some equitable interest in the premises by reason of the commission he expected to make upon the contemplated sale, and upon failure to organize the corporation a trust might possibly have resulted to him, had the title been in Lichtenthaler. McComas was employed by Cate to effect a sale of his property, and, by reason of this agency, a confidence existed between them; and to conclude that, because a private interest in the premises might possibly result to McComas, he was therefore not a stranger to the deed, would be equivalent to holding that this confidence might be betrayed with impunity. If such a rule were to prevail, it would open the door to fraud; for then one might be induced to deposit with his supposed friend a deed to real property, made to another, to be delivered

upon the performance of a subsequent condition, and, without the fulfillment of such condition, the deed could be delivered to the grantee, and thereby pass the title, because the person whom the grantor trusted may have been the real purchaser, and adopted the method suggested for the purpose of acquiring an equitable interest in the premises, that he might benefit himself by the transaction. Let this once become a rule, and it would be safe to predict that no deed would thereafter be deposited as an escrow. Such a doctrine can never be sanctioned by a court of equity; and Cate having deposited the deed with McComas, to be delivered to Lichtenthaler upon the execution of the notes and mortgage by the corporation, when organized, no title to the land could pass without the grantor's consent until the condition had been fully performed: *Everts* v. *Agnes*, 4 Wis. 356 (64 Am. Dec. 314); *Dyson* v. *Bradshaw*, 23 Cal. 528; Devlin on Deeds, § 322.

Counsel for plaintiff cite in their brief and seem to rely upon the case of *Allen* v. *Ayer*, 26 Or. 589, (39 Pac. 1,) as supporting the doctrine that a deed fraudulently obtained by the grantee is not void, but voidable merely, and passes the title. Such is the law in some cases, for if the grantor be induced by fraud, or any other means, to voluntarily deliver the deed to the grantee, the act manifests the assent of the grantor to the contract, and passes the title; and, this being so, an innocent purchaser from the grantee for a valuable consideration would take the title freed from any equity of the grantor,

but this rule can have no application to a deed deposited as an escrow. In *Everts* v. *Agnes*, 4 Wis. 356, (64 Am. Dec. 314,) SMITH, J., in commenting upon this question, says: "It would seem that where a deed deposited as an escrow is obtained without performance of the conditions, by operating upon the fears or credulity of the depositary, or by fraudulent collusion with him, or by other undue means, it bears a closer analogy in principle to the case of a forged or stolen deed, than it does to that of a fraud practiced directly upon the grantor, by means of which he is induced to deliver it. In the latter case the legal title passes, and a subsequent *bona fide* purchaser is protected. In the former, no title passes whatever, and a subsequent purchaser is not protected. In the one class of cases there is the voluntary assent of the grantor; in the other, there is no assent at all." A deed deposited as an escrow is nothing more than a mere scroll until the condition is fully performed or the contingency happens upon the faith of which it was deposited; and, this being so, no delivery of the scroll prior to that time without the grantor's consent could give life to the instrument, or convey the title to the grantee or purchaser under him: *Smith* v. *South Royalton Bank*, 32 Vt. 314 (76 Am. Dec. 179); *Black* v. *Shreve*, 13 N. J. Eq. 455; *Berry* v. *Anderson*, 22 Ind. 40; *Patrick* v. *McCormick*, 10 Neb. 1 (4 N. W. 312). In *Kelly* v. *People's Transportation Company*, 3 Or. 189, it is held that the grantor, while still retaining the purchase money, can have no standing in a court of equity upon which to ask to have a voidable

deed set aside; but, if this be a rule of law, it can
have no application to the case at bar, in which
the deed is void. The deed from Cate to Lichten-
thaler being void, it follows that the plaintiff took
no title by his deeds from Lichtenthaler and Mc-
Comas, but, these deeds having been recorded, cre-
ated a cloud upon Cate's title, to remove which the
court properly decreed their cancellation.

Equity usually treats time as originally of the
essence of the contract, when the agreement shows
that the parties intended that it should be so re-
garded: Waterman on Specific Performance, § 460;
Pomeroy on Specific Performance, § 399. Time is
also considered as of the essence of the contract
where the character of the property renders it liable
to fluctuations in value, and this rule is especially
applicable to contracts for the purchase and sale of
mining properties: *Durant* v. *Comegys*, 28 Pac. 425
The purchase in the case at bar was to be consum-
mated by executing the notes and mortgage in
about fifteen days from the time the deed was de-
posited. The character of the property was such
that it might become very valuable or prove abso-
lutely worthless as a mine, and if time were not of
the essence of the contract, the plaintiff, by prospect-
ing, might discover vast mineral wealth, and, if so,
comply with his part of the agreement; or demon-
strate that the land was valueless as a mine, in
which case he could abandon the contract and sur-
render the property, and thus perchance prevent a
sale of it to others for mining purposes. The
reason for the existence of the rule must be found

in its necessity, and in all contracts for the sale of real property, subject to great fluctuations in value, time must of necessity be an element of the agreement, and hence, the plaintiff having failed to procure the notes and mortgage according to agreement, the defendant had a right to rescind the contract. The person agreeing to sell real property is not in all cases, upon the forfeiture of the contract, entitled to retain the money paid thereon; for where the value of the property remains the same, and he is permitted to retain both payment and realty, great injustice might be done: *Settle* v. *Winters*, 10 Pac. 216. The plaintiff, on July twelfth, eighteen hundred and ninety-five, in pursuance of the terms of the contract, tendered to Cate seven hundred and fifty dollars and interest thereon at ten per cent. for one year, and if time in this respect was of the essence of the contract, the tender was made of the proper amount and on the day it became due. The only default was in the failure of the plaintiff to organize the corporation, and procure from it and deliver to Cate the notes and mortgage, by reason of which failure the deed never became operative. Forfeiture is not favored in equity, except as a strict right, or where the contract stipulates therefor, and in each case in which the question is involved it must necessarily be determined by the particular circumstances governing it: Waterman on Specific Performance, § 435. The evidence shows that the property has enhanced in value, and in view of this rule we think the lower

court properly decreed a repayment and remuneration for improvements.

The deeds being void, the payments to be made by defendants cannot be made dependent upon their cancellation. Plaintiff having paid part of the purchase price in pursuance of the contract, and entered into possession of the property upon the faith of which he made permanent improvements thereon, he has in equity a lien upon said property to secure the amounts so awarded to him by the trial court, which lien will be foreclosed by the decree of this court, and the premises ordered sold to satisfy the same. It follows that the decree must be modified so as to decree the deeds void, and the existence and foreclosure of said lien, and in all other respects affirmed, the defendants to recover their costs and disbursements in this court only.

MODIFIED.

Argued March 2; decided September 21, 1896; rehearing denied.