Argued December 4, affirmed December 29, 1914.

## TELSCHOW v. QUIGGLE.*
(145 Pac. 11.)

**Vendor and Purchaser—Bona Fide Purchaser—Notice.**

1. Where a grantor, executing a deed with the grantee in blank, remained in possession of the property, and a third person, obtaining the deed without authority to fill in the name of the grantee, except

---

*As to the necessity and sufficiency of delivery of a deed, see note in 10 L. Ed. (U. S.) 903.

For the title of a *bona fide* purchaser from a fraudulent grantee, see note in 67 L. R. A. 891, 898.

The authorities passing upon possession of land as notice of title are reviewed in a note in 13 L. R. A. (N. S.) 49.        REPORTER.

on specified conditions, inserted the name of the grantee without the performance of the conditions, and the grantee conveyed the property to another, who relied on the grantee's representations, the latter was not a *bona fide* purchaser, and acquired no title as against the grantor.

**Vendor and Purchaser—Bona Fide Purchaser—Who is.**

2.    Where a deed executed by a grantor, with a blank for the grantee, is surreptitiously and fraudulently taken from the grantor's house and the blank filled up, no title passes, and a *bona fide* purchaser for a valuable consideration from the grantee in the deed acquires no title, especially if the grantor remains in possession of the property.

[As to what constitutes delivery of deed, see notes in 16 Am. Dec. 35; 58 Am. Rep. 289; 53 Am. St. Rep. 537. As to validity of deed to blank grantee, see note in Ann. Cas. 1912A, 538.]

**Deeds—Delivery—Effect.**

3.    A deed delivered to the grantee without the express or implied consent of the grantor that the deed shall pass irrevocably from his control conveys no title to the grantee.

**Deeds—Delivery—Effect.**

4.    A deed with a blank for a grantee is a conveyance only where the blank is filled by one authorized to fill it, before or at the time of delivery to the grantee, and on compliance with the conditions imposed by the grantor.

**Deeds—Mutual Assent of Parties.**

5.    The force of a deed depends on the mutual assent of the parties to it, without which there can be no delivery.

**Vendor and Purchaser—Bona Fide Purchaser—Notice.**

6.    One contemplating the purchase of land from a grantee while the grantor remains in possession must take notice of the rights of the grantor which may exist outside the deed.

From Lane: Lawrence T. Harris, Judge.

Department 2.    Statement by Mr. Justice Bean.

This is a suit by August Telschow against George E. Quiggle, F. L. Kelly and Carl Tucker, to set aside two deeds of a quarter section of land in Lane County, for the reason that the one from plaintiff was obtained and delivered by means of a fraudulent scheme, and was void, and the other to defendant Kelly passed no title. From a decree rendered in favor of plaintiff,

and against defendants, George E. Quiggle, F. L.
Kelly and Carl Tucker, defendant Kelly appeals.

AFFIRMED.

For appellants there was a brief over the name of
*Messrs. Jeffrey & Lenon,* with an oral argument by
*Mr. Charles E. Lenon.*

For respondent there was a grief over the names of
*Mr. Richard S. Smith* and *Messrs. Woodcock & Bryson,*
with an oral argument by *Mr. Smith.*

MR. JUSTICE BEAN delivered the opinion of the court.

It appears that the plaintiff, August Telschow, was
a man of advanced years, uneducated and ignorant of
business ways.   He obtained title under the homestead
laws to a quarter section of land in a remote part of
Lane County.   He had been living on this place for a
long time, when the defendant Carl Tucker and wife
came to live with him.   As time went on the plaintiff
gained confidence in Tucker, and there was some talk
between them in regard to trading the former's land
for a farm in the Willamette Valley.   Pursuant to this
talk, on the 18th of June, 1912, plaintiff and Tucker
went to Florence, where Telschow executed and ac-
knowledged a deed of the land with the name of the
grantee in blank, the possession of which was retained
by plaintiff for some time.   When Tucker started for
the Willamette Valley, Telschow permitted him to take
the deed with authority to trade the land for a farm
of equal worth in the valley.   Tucker had no authority
to insert the name of the grantee in the deed or deliver
the same, except upon the conditions stated by the
plaintiff.   Tucker went to Portland, Oregon, retained
the deed until August, and wrote the plaintiff that he

had not been able to trade the land. About the last of August he met defendant Quiggle, whom, he states, he informed in regard to the conditions of the deed, and with whom he exchanged the land, pursuant to Quiggle's advice, for two residence lots in Portland, subject to a mortgage, and 40 acres of land in Clark County, Washington, also subject to a mortgage. These properties were deeded directly to Tucker by Quiggle, whose name was inserted in the deed by a stenographer. The instrument was then recorded, September 3, 1912, in the records of deeds of Lane County, Oregon. Tucker soon traded the property for two second-hand automobiles, which he sold.

The Circuit Court found, and the evidence shows, that Quiggle knew of the conditions attached to the authority conferred upon Tucker by plaintiff, knew that Tucker had no authority to make the exchange, and that Quiggle was a party to the fraud practiced in the transaction. Quiggle had never seen the Lane County land, and had no knowledge of the same, except such as he received from Tucker. The trial court found that the manner in which the deed was obtained was a species of larceny. About four days after Quiggle obtained the deed, he traded the land to defendant Kelly for the furnishings and lease of a rooming-house in Portland, known as the "Otis Rooming-house," and received a bill of sale therefor. Quiggle, as a witness for defendants, testified that he gave Kelly all the information, in regard to the land in question, that he received from Tucker. After the execution of the deed, June 18, 1912, Telschow resided upon the land, and was in the exclusive, open and notorious possession thereof, and knew nothing about the pretended transfer to Quiggle until about the 15th of October of that year, when he immediately commenced this suit.

1. Kelly obtained an abstract of title, but did not examine the land, nor make any further inquiry to ascertain the true condition of the possession or title, except such as was given him by Quiggle. It is contended upon the part of the defendent Kelly that he is an innocent purchaser of the land for value, and that as to him the deed is valid. By the conveyance from Quiggle, the grantee named in the deed executed in blank by Telschow, who thereafter retained exclusive, open, and notorious possession of the land, defendant Kelly acquired no title as against Telschow, the grantor named in the original deed, for the reason that there had been no valid delivery of such deed to Quiggle, who never obtained lawful possession of it: *Allen* v. *Ayer,* 26 Or. 589 (39 Pac. 1). The holding in the case cited has ever since been followed.

2, 3. On the question of the sufficiency of facts to excite inquiry and to put a person upon notice, each case depends upon its own facts: *Knapp* v. *Bailey,* 79 Me. 195 (9 Atl. 122, 1 Am. St. Rep. 295); note to *Garbutt* v. *Mayo* (Ga.), 13 L. R. A. (N. S.) 60. If a deed which has been executed and acknowledged by the grantor, with a blank for the grantee's name, be surreptitiously and fraudulently taken from the grantor's house, and the blank filled up, no title passes thereby, and a *bona fide* purchaser for a valuable consideration from the person holding the deed stands in no better situation than such fraudulent holder, especially if the original grantor remains in possession of the property: 39 Cyc. 1692. A deed that is delivered to the grantee, without the express or implied consent of the grantor to the effect that the deed shall pass irrevocably from his control, conveys no title to the grantee. Such a deed would be of no more force than one with a forged signature: *Tyler* v. *Cate,* 29 Or. 515 (45 Pac. 800);

*Gaston* v. *Portland,* 16 Or. 255 (19 Pac. 127); *Burns* v. *Kennedy,* 49 Or. 588 (90 Pac. 1102); *De Bow* v. *Wollenberg,* 52 Or. 404 (96 Pac. 535, 97 Pac. 717); *Bradford* v. *Durham,* 54 Or. 1 (101 Pac. 897, 135 Am. St. Rep. 807); *Hilgar* v. *Miller,* 42 Or. 552 (72 Pac. 319); *Everts* v. *Agnes,* 4 Wis. 343 (65 Am. Dec. 314).

4. There are two conditions requisite to make a deed, executed with the name of the grantee left blank, that operate as a conveyance of the real estate described: The blank must be filled by the party authorized to fill it, and this must be done before or at the time of delivery of the deed to the grantee: *Cribben* v. *Deal;* 21 Or. 211 (27 Pac. 1046, 28 Am. St. Rep. 746); *Allen* v. *Withrow,* 110 U. S. 128 (3 Sup. Ct. Rep. 519, 28 L. Ed. 90). Tucker had no authority to fill in the name of Quiggle as grantee in the deed, or any other person's name, except on the condition named by Telschow, to wit, upon the conveyance to the plaintiff of a farm in the Willamette Valley. The whole transaction between Tucker and Quiggle was a farce, and we think, if Kelly had exercised the care of an ordinarily prudent man, he could have ascertained the facts. Quiggle obtained legal advice, and was informed that the deed executed in blank would be good with the name of the grantee inserted, provided Tucker had authority to fill in the name. Under the circumstances shown by the record, Tucker never had any authority to insert Quiggle's name in the deed. Telschow at all times had full right to its control.

5. The binding force and effectiveness of a deed must necessarily depend upon the mutual assent of the parties to it, without which there can be no delivery: *De Bow* v. *Wollenberg,* 52 Or. 404 (96 Pac. 535). In *Sharp* v. *Kilborn,* 64 Or. 371 (130 Pac. 735), we find the law stated that, where a grantor delivered a deed

to a third person, with instructions not to deliver it to the grantee unless the purchase price was paid, a delivery contrary to such directions passed no title, whether the third person was an agent of the grantor or whether he was an escrow. It appears that Kelly not only failed to take notice of plaintiff's possession, but was at least careless and negligent in regard to making inquiry either as to the value or possession of the land. As stated by the trial court:

"The most that can be said for Kelly is that the transaction was a 'sight and unseen' trade so far as concerned the Lane County property; and certainly the exercise of ordinary prudence, based upon the information possessed by Kelly and the aforesaid circumstances, would have betrayed the fact that plaintiff had been wickedly defrauded."

6. The authorities are inharmonious as to the effect of a grantor's possession of the premises which he has conveyed after the execution of a deed, and whether his possession under these circumstances is such that a person contemplating the purchase or acquiring some interest in the land is compelled to take notice of the rights of such grantor which may exist *dehors* his deed: 2 Devlin, Real Estate, § 761. After careful examination of many authorities, we find in no case, where a deed executed and acknowledged with the name of the grantee left blank, and afterward fraudulently inserted, where the grantor has remained in the open and notorious possession of the premises, that a deed to a third person claiming to be an innocent purchaser has been upheld: *Tyler* v. *Cate*, 29 Or. 515 (45 Pac. 800); *Randall* v. *Lingwall*, 43 Or. 386 (73 Pac. 1); *Bumpas* v. *Zachary* (Tex. Civ. App.), 34 S. W. 672; 2 Devlin, Real Estate, 762.

It appears from the record that Kelly relied upon defendant Quiggle as to the value of the plaintiff's land, the condition of the title, except as shown by the abstract, and the possession thereof. For his damages, if any, he should look to defendant Quiggle.

The decree of the lower court is right, and should be affirmed; and it is so ordered.          AFFIRMED.

MR. CHIEF JUSTICE McBRIDE, MR. JUSTICE EAKIN and MR. JUSTICE McNARY concur.