Argued September 25, affirmed October 24, rehearing denied November 21, 1922.

## NORTON *v.* NORTON.

(209 Pac. 1048.)

**Deeds — Delivery, if Made to Third Party for Grantee Without Reservation, is Absolute.**

1. The delivery of a deed to a third person for the grantee is absolute, unless the grantor at the time of making it expressed some intention of retaining control thereof, or there are circumstances showing that the deposit was made subject to recall.

**Deeds—Intent is Essential to Valid Delivery.**

2. To constitute a valid delivery of a deed, it is essential that there be an intention on the part of the grantor to pass the deed from his possession and irrevocably beyond his dominion and control, and he must actually do so with the intent that it be taken by the grantee or some one for him.

**Evidence—Attending Circumstances may be Considered in Determining Intent of Grantor to Deliver Deed in Escrow, and Conditions may be Shown by Oral Evidence.**

3. The circumstances attending delivery of a deed in escrow may be considered as bearing upon the grantor's intention, and the conditions of a delivery in escrow may be established by oral testimony, not being subject to the general rule relative to such testimony

**Deeds—Evidence Held Sufficient to Warrant a Finding That a Deed Delivered in Escrow was Held Subject to Recall.**

4. Evidence *held* to warrant a finding that an elderly lady delivered a deed in escrow upon condition that the grantee, her grandson, live with her and manage her farm.

From Clackamas: JAMES U. CAMPBELL, Judge.

Department 2.

This is a suit to declare a certain deed void. A decree was rendered in the Circuit Court in favor of plaintiff. Defendants appeal.

The circumstances leading up to the transactions are about as follows: Defendant Norma Norton, who

1. Authorities discussing the question as to effect of delivery of deed to third person to be delivered to grantee after grantor's death upon performance of conditions by grantee, see notes in Ann. Cas. 1915C, 378, 385, 388; 54 L. R. A. 865; 9 L. R. A. (N. S.) 317.

4. Delivery of deeds in escrow, see note in 53 Am. St. Rep. 555.

is the grandchild of plaintiff, was taken by plaintiff and her husband when he was a child two years of age. In 1900, by a rather irregular proceeding, he was adopted as the child of Seba Norton, the husband of the plaintiff, but not by plaintiff. During that year Seba Norton executed his will and among other things devised to the plaintiff the property in question in this suit with remainder after her death to defendant Norma Norton upon this condition:

"Providing said child who is now seven years old shall prove a good boy. R. Dundas to be the judge, but if said Norma should prove to be a bad boy and unworthy child, then the property to be equally divided among the other heirs by the administrator of the estate and guardian of said Norma the minor and adopted child."

After the death of Seba Norton it was learned that the land was owned by plaintiff and her husband as an estate by entirety, and therefore the will was not effective to transfer the title to the land in question.

About February 16, 1905, plaintiff went to Judge Thomas F. Ryan, her legal adviser, with a view of arranging matters so that she could leave her property to Norma Norton after her death. Plaintiff appeared to have little faith in wills. Judge Ryan prepared the deed in question which Mrs. Norton signed and acknowledged, and he told her not to deliver it to anyone "except she felt she was dying." Plaintiff took the instrument home with her and kept it several days. Norma Norton was then about thirteen years old. Plaintiff pleads and contends in effect that it was understood that if defendant Norma Norton should live with her as a companion upon the farm and assist her the remainder of her life he should have the property at her death; but that in

the event he failed to do so then the instrument was to be returned to plaintiff and be void. About the twentieth day of that month plaintiff being ill, gave the deed to W. G. Randall with instructions, as she testifies that "if Norma left me I had to have it back, because that is all the home I ever had, and he said he would." Otherwise Randall was to keep the deed until her death and then deliver it to Norma. After the deed was prepared Judge Ryan wrote on the envelope containing the deed as follows:

"This contains a Deed in Escrow given by Mary Norton to Normie Norton and delivered this —— day of February 1905 to —— with instructions to deliver the same to the said Normie Norton upon the death of the said Mrs. Mary Norton and not otherwise."

After the deed was deposited with Mr. Randall his name was inserted in the blank on the envelope in the presence of two witnesses. When Norma was about seventeen years of age, in 1909 or 1910, he deserted the plaintiff and has never had anything to do with her since in the way of assisting her or living with her upon the land. Mrs. Norton has remained in possession of the land during all of the time mentioned. She seems to have paid no attention to the instrument in question until she thought of selling the land, when it appeared that the deed had been signed. For the last ten years Norma Norton has made his home with the Randalls. Plaintiff demands the return of the deed, and instituted this suit for that purpose.        AFFIRMED.  REHEARING DENIED.

For appellants there was a brief over the names of *Mr. Grant B. Dimick* and *Mr. W. I. Mulvey,* with an oral argument by *Mr. Dimick.*

For respondent there was a brief over the name of *Messrs. Brownell & Sievers,* with an oral argument by *Mr. Charles Sievers.*

BEAN, J.—The pivotal point in this case is in relation to the delivery of the deed in question.

1. A delivery of a deed to a third person for the grantee is absolute, unless the grantor at the time of making it mentioned some intention of retaining control thereof or there are circumstances showing the deposit was made subject to recall: *Dieckman* v. *Jaeger,* 87 Or. 392 (170 Pac. 727). In a case similar to the present one, that of *Payne* v. *Hallgarth,* 33 Or. 430 (54 Pac. 162), the grantor during his last illness desiring to make a disposition of his property was advised by his physician and others to execute a deed and put it in the bank, and "that if he got well he could destroy the deed, and if he did not get well it should be given to Jane [grantee]." After the deed was executed the grantor voluntarily gave it to the grantee without any understanding that it should be given back to him. The deed being handed back to the grantor he put it under his pillow and afterwards gave the deed to his brother saying: "Here is the deed, under my pillow. I want you to take that, and take care of it until after my death, and then have it recorded." No other conditions to the delivery were imposed at that time. At page 440 of the opinion Mr. Justice WOLVERTON states:

"As we have seen, the intention of the grantor should prevail, and it will determine the question of delivery. If he had pursued the course which Brownell, Honan, and Marsh say his conversation indicated that he intended to, it is plain a delivery would not have been accomplished, for the reason that he would have retained the power of recalling the in-

strument, and title could not have passed. But, if it ever was his intention to deposit the deed in the bank subject to his subsequent directions, he abandoned it; for he finally placed it in the hands of Charles Hallgarth, his brother and partner in business.''

The general rule is that it is essential to the validity of a deed that there should be a delivery of the instrument. In order to constitute a sufficient delivery of a deed the grantor must clearly manifest the intention that his deed shall presently become operative and effectual, that he shall lose control over it, and that the grantee is to become possessed of the estate. This rule rests upon the intention of the grantor, as manifested by the circumstances surrounding the transaction. The question of delivery must be determined from the facts of each particular case. It is essential to a valid delivery that there be some act or declaration from which an intention to deliver may be inferred, and this is true although the grantee is of very immature years. The parties must mutually assent to the deed. There can be no valid delivery without the knowledge or consent of the grantor, or acceptance of the grantee: 18 C. J., p. 196, §§ 94, 95; *Fain* v. *Smith,* 14 Or. 82 (12 Pac. 365, 58 Am. Rep. 281, note); *Hoffmire* v. *Martin,* 29 Or. 240 (45 Pac. 754); *Tyler* v. *Cate,* 29 Or. 515, 521 (45 Pac. 800); *Burns* v. *Kennedy,* 49 Or. 588 (90 Pac. 1102); *Debow* v. *Wollenberg,* 52 Or. 404 (96 Pac. 536, 97 Pac. 717); *Clark* v. *Clark,* 56 Or. 218 (107 Pac. 23); *Coleman* v. *Coleman,* 216 Ill. 261, 268 (74 N. E. 701).

In *Foote* v. *Lichty,* 60 Or. 542 (120 Pac. 398), the syllabus reads:

''Whether the deposit of a deed in escrow for delivery on grantor's death passes title, depends on

whether the grantor intends to and does retain control over it after such delivery.''

In 18 C. J., page 198, note, we find the following:

''The question of the delivery of a deed or other written instrument is one of intention, and, to constitute a complete delivery thereof, the grantor must deal with it in a way evincing an intention to part presently and unconditionally with all control over it, and that it shall take effect according to its terms.'' *Hooper* v. *Vanstrum*, 92 Minn. 406, 409 (100 N. W. 229).

''The true test of delivery is not as to what was actually said or done or what became of the conveyance, but whether or not the grantor intended to reserve to himself the *locus poenitentiae*. If he did, there is no delivery and no present intention to divest himself of the title to the property.'' *Gulf Red Cedar Co.* v. *Crenshaw*, 169 Ala. 606, 613 (53 South. 812).

2. To constitute a valid delivery of a deed and thereby convey title to the land, it is essential there be an intention of the grantor to pass the deed from his possession and irrevocably beyond his dominion and control, and he must actually do so with the intent that it be taken by the grantee or someone for him. Both the intent and the act are necessary to a valid delivery: 18 C. J., p. 200, note; *Allen* v. *Ayer*, 26 Or. 589 (39 Pac. 1); *Hill* v. *Kreiger*, 250 Ill. 408, 413 (95 N. E. 468).

3. The authorities are practically in accord that in order to ascertain what the intent of the grantor was in regard to such a deposit the circumstances surrounding the transaction, as well as the direct proof, will be considered: *Criswell* v. *Criswell*, 138 Iowa, 607, 609 (116 N. W. 713).

8 R. C. L., page 997, Section 61, reads:

''Whether the delivery is such that it will take final effect at the grantor's death is largely a question of fact, to be determined from the particular circum-

stances of each case, and evidence may be received as to the instructions given by the grantor to the depositary, in order to determine the time of delivery and when the deed was to become effective * * . Generally those deliveries have been held ineffectual where a fair construction of the grantor's instructions show he did not contemplate absolute release of control, or that the deposit of the deed was in view only of some impending event, as a surgical operation or the result of a present illness, or that his long continued control of possession after execution of the deed negatives an intention to deliver presently."

The essential feature of an escrow is that it be deposited with a stranger to it, who may be any person other than the grantee, to hold until the performance of some condition, or happening of some event, and then to be delivered to the grantee, and it does not become a conveyance so long as it remains in that condition, or until the condition is performed, or the event takes place: *Tyler* v. *Cate,* 29 Or. 515 (45 Pac. 800); *Gaston* v. *City of Portland,* 16 Or. 255 (19 Pac. 127). In the latter case at page 261, Mr. Chief Justice LORD announced a rule which is applicable to the case in hand, thus:

"The intent of the grantor must govern, and this is to be derived from all the facts, circumstances, and proof. Nor is it necessary that the condition upon which the deed is delivered in escrow be expressed in writing; it may rest in parol, or be partly in writing and in part oral. The rule that a contract in writing *inter partes* must be deemed to contain the entire agreement or understanding has no application in such case. (*Stanton* v. *Miller,* 58 N. Y. 193.)"

4. With these rules in view let us consider the testimony and surrounding circumstances of the case. We have to deal with a transaction that took place about fifteen years before the trial of this case. The

105 Or.—42

testimony is conflicting. It may be that the earmarks
of the arrangement will greatly assist in solving the
question of whether plaintiff surrendered to Randall
the control of the deed, and relinquished all authority
and dominion of it so as to constitute a delivery.
Mrs. Norton states positively and reiterates that at
the time she placed the paper in Randall's hands
she stated that, "If Norma left me I had to have it
back," and that Randall said he would give it back.
On cross-examination Mrs. Norton testified in part:

"Q. And gave him this envelope and deed?

"A. Yes, sir; for to hold as long as the boy stayed
with me, and when he left it was to come back. I
thought Mr. Randall's word was good."

It seems that Mrs. Norton is a woman without
much education, but has fair intelligence and common
sense. The farm was about all the property she pos-
sessed, and it was difficult and lonesome for her to
support herself thereon without some assistance and
company. She had seen her own children marry and
leave home, and did not rely upon them to stay with
her. Norma Norton, then a boy about thirteen years
of age, would be a companion for her and of great
assistance upon the farm if he remained with her
during her life. Her husband had made a will in
which he attempted to will the land to Norma after
the death of Mrs. Norton, "providing said child who
is now seven years old shall prove a good boy," but
if Norma should prove to be "unworthy" the prop-
erty should go to the other heirs. It is suggested
on behalf of defendants that Mrs. Norton in signing
the deed was attempting to carry out the wish of her
deceased husband. The condition noted appearing
in the will, it would not follow that Mrs. Norton
would convey the farm unconditionally to Norma
without regard to whether he lived on the farm as

her companion during her life, or not. It would be only natural that, following the precaution of her late husband expressed in his will, she would intend and make the condition as she claims about receiving the deed back if Norma ceased to live with her upon the farm.

Mrs. Norton is corroborated to a certain extent by the testimony of her daughter Mrs. Bessie Dundas, who states in effect that she did not know about it when the deed was signed but "they have all talked it among ourselves that he [Norma] was to stay with her and take care of her," and have the farm, in the presence of the boy; that this was both before and after the deed was written, ever since he was old enough to know anything. Mrs. Dundas testified:

"Before she made this deed she bought a horse and wagon, and a few implements, and she said to him: 'If you stay and run this place we will stay here and run it together.' That was before she made the deed."

Defendant Norma Norton, a young man about twenty-seven years of age at the time of trial, testified in substance that there was no agreement between him and plaintiff that he should live upon the land and be a companion to her during all her life, until a long time after Mrs. Norton claims the agreement was made in 1905, when the deed was signed.

"And the only time after that was in 1909, when I was staying with Mr. Randall. She agreed to buy a horse and buy farm implements if I would come and take care of the place. I said I would. She bought one horse and that is all she ever done to fulfill the agreement."

We mention the so-called agreement, not for the purpose of considering it a binding contract, but as

indicating what the understanding was on the part
of Mrs. Norton and what she intended when she de-
posited the deed with Randall. The memorandum
written by Judge Ryan on the envelope in which the
instrument was placed some time before it was de-
posited with Mr. Randall was a suggestion of Judge
Ryan's to Mrs. Norton. As seen by the opinion in
*Payne* v. *Hallgarth,* Mrs. Norton was not bound to
follow the advice she had obtained and it was per-
fectly competent for her to add to the directions on
the envelope the condition that if Norma did not live
on the land with her as a companion during her life-
time, but left her, she was to have the deed back.
This condition is not in conflict with the memoran-
dum but in addition thereto. The test is what she
intended at the time of the deposit of the writing
with Randall, to be ascertained from both her oral
and written instructions and all the surrounding cir-
cumstances. Judge Ryan says:

"And I advised her against giving it to anybody
except she felt she was dying, or going away, and
that is why it was left blank. It was left really in the
place of a will. * *

"I believe if it was meant to deliver it at that time
she would have left it with me. I had all her other
papers and I think she would have left it with
me. * *

"I know if she had come around to me for it I
would have let her have it if she had given it to me."

W. S. Randall testified that it was his understand-
ing that he was to keep the deed until Mrs. Norton
died and then turn it over to Norma Norton; that
was her instructions and nothing else. Mrs. Randall
remembers the transaction in the same way. She
also testified in effect that in the fall of 1907, Mrs.
Norton let Norma go to live with them for a year.
He was to attend school in the winter and work in'

the summer and Mrs. Norton was paid half his wages by the Randalls.

In the fall of 1908, before the year was up Mrs. Norton requested that Norma "go with her * * and he did." She further testified as to the language Mrs. Norton then used as follows:

"She said if he would come on the place, and run the place, she would buy the horses and help him out all she could, if he would come and live with her, and that was all the agreement that was made, and he could have the crop."

It is not strange that the Randalls should remember the written instructions and no others for fifteen years. The memorandum on the envelope indicates that the instrument was deposited with Randall as an escrow. The question is what were the conditions upon which the writing should take effect as a deed. The Nortons and Randalls were friendly and it would not be expected that Mrs. Norton would keep her plans secret from them and only divulge just what Judge Ryan had written on the envelope. The condition that the deed should be returned to her if the boy left her, was a reasonable one for her to make. The testimony does not indicate that Mrs. Norton has changed her mind in regard to the transaction since the writing was deposited with Randall.

The learned trial judge saw the witnesses and observed their manner of testifying on the stand, and in regard to any conflict in the testimony his decision is entitled to have much influence with one reading the typewritten record. The finding of the Circuit Court was to the effect that Mrs. Norton did not intend that the deed should pass finally beyond her control when she deposited it with Randall, at a time when she was sick and did not expect to recover; and

that the instrument was testamentary in character and void.

There was no valid delivery of the instrument signed and acknowledged by plaintiff, so that the same became effective as a deed. The condition as to delivery imposed by Mrs. Norton at the time of depositing the writing with Randall not having been fulfilled but violated, the deed is void.

The decree of the trial court should be affirmed. It is so ordered.    AFFIRMED.    REHEARING DENIED.

BURNETT, C. J., and BROWN and McCOURT, JJ., concur.