[Argued January 24, 1893; decided January 30, 1893.]

# ANNIE PETRAIN ET AL. v. JOHN KIERNAN ET AL.

[S. C. 32 Pac. Rep. 158.]

POSSESSION OF PROPERTY—NOTICE TO PURCHASER.—The effect of the posses-
sion of real property is to excite inquiry in reference to the title. Even
where the record title is perfect, a knowledge of extraneous facts sufficient
to put a purchaser on inquiry, will charge him with all the knowledge
that he might have obtained by a reasonable investigation.

PURCHASER FROM HOLDER OF LEGAL TITLE—TRUST.—Where a *cestue que
trust* is in possession of real estate the legal title to which is in another,
a purchase from the latter takes it charged with notice of the trust.

TRUST—NOTICE—EVIDENCE.—In a suit to enjoin an action at law for the
recovery of a certain lot, and to establish a trust in favor of plaintiff, there
was evidence that with money left by plaintiff's deceased mother in a
bank, in the name of plaintiff's sister, their father purchased, in the
latter's name, a certain lot; that this lot was exchanged by the father
for four lots, to one of which he retained title; that he afterwards con-
veyed such lot to a contractor to pay for a dwelling on one of the other
three ( the lot in dispute ); that plaintiff had occupied the lot ever since
the house was erected, several years prior to bringing this suit; that it
was the understanding of the father and plaintiff from the statements of
the sister that plaintiff was to have the property in dispute as her share
in the division of the money left by their mother; and that defendants
obtained title since the occupancy by plaintiff by mesne conveyances
from the sister. *Held*, that a decree for plaintiff was proper.

Multnomah County: LOYAL B. STEARNS, Judge.

Defendants appeal. Affirmed.

*Frederick R. Strong*, for Appellants.

*Alfred F. Sears, Jr. ( McGinn & Simon* on the brief),
for Respondents.

LORD, C. J.—This is a suit or cross-bill in equity to
enjoin an action at law for the recovery of certain real
property, which had been begun by defendants against
the plaintiffs, and praying that the defendants be de-
clared trustees of such real property for the benefit of
the plaintiff Annie Petrain, and that she be also declared
the actual owner of the same, and entitled to the pos-
session thereof. The facts out of which the controversy
arises, as exhibited by the pleadings, are briefly these:

On April 8, 1891, John A. O'Brien and Emily H. O'Brien sold and conveyed to Daniel Kern, by deed of warranty, for the consideration named therein, lot number six in block number two hundred and fifty-two in the city of Portland, subject to a certain mortgage for fourteen hundred dollars. On the eighteenth day of April, 1891, Daniel A. Kern and Emma Kern sold and conveyed the same property, for the same consideration, to Mary Kiernan for her natural life, and the remainder in fee simple to Mary A. Kiernan, Frank Kiernan, Ellen Kiernan, and Louise Kiernan, subject to the same mortgage, both which deeds were duly recorded. At the time of making these conveyances the plaintiffs, who were husband and wife, occupied the premises, and upon their refusal to vacate them, the defendants Mary Kiernan *et al.* brought an action at law to recover the same, whereupon the plaintiffs Charles A. Petrain and Annie Petrain filed their cross-bill against them, in which, *inter alia*, it was alleged that the plaintiffs were in the actual *bona fide* and exclusive possession of such real property ; that it was purchased with money belonging to the plaintiff Annie Petrain, but that her father, Wm. Showers, who superintended the transfer of said property at the time of the purchase, had the conveyance thereof made to Emma O'Brien, one of his daughters and sister of the plaintiff Annie Petrain, although it was always understood between them that Annie Petrain was the owner of the same, and that Emma O'Brien held the title in trust for her. Soon after such purchase the plaintiffs erected a dwelling-house upon the lot, paying for the same with their own money, and entered into the occupation of the premises, and ever since have remained in the actual, exclusive and notorious occupation of said house and lot, exercising therein every right of ownership, and that the defendants were notified and had full knowledge of the ownership, possession and adverse claim of the plaintiffs, etc.

The defendants denied that plaintiffs own any right,

title or estate in the property, and all other material allegations of the complaint; and set up that, desiring to purchase a home for themselves, they requested John Kiernan, who is the son of Mary Kiernan, to select and purchase a lot for them to be occupied as a home; that they had no knowledge or notice whatever of whom said real estate was purchased, or of any interest or claim therein or thereto by the plaintiffs; that the defendant John Kiernan purchased the said property and received a deed therefor from Daniel Kern, who subsequently conveyed it as already stated to Mary Kiernan *et al.*, and that they furnished the money or consideration for which said real property was purchased, and are the exclusive owners thereof; that it was purchased in open market; that the record of deeds for the county showed the legal title of said property to be at the time of its purchase in Emily O'Brien, who deeded it to Daniel Kern as before stated, etc.  A reply was filed to the new matter, and the cause being at issue, was referred to a referee, who, after hearing the testimony, reported to the court his findings of fact and conclusions of law, which were adverse to the defendants.  The court, after argument, confirmed the report, except as to the accounting, and decreed that the plaintiff Annie Petrain is the owner of the property and that the defendants hold the legal title in trust for her, etc.

It is admitted that the plaintiffs were in the actual possession of the property at the time of the purchase, and for several years preceding, and that it was of that character which places the purchaser upon inquiry.  The effect of possession is to excite inquiry with reference to the title, and operates as effectually to notify a purchaser as any other circumstance the knowledge of which may be brought home to him.  Mr. Pomeroy says: "If a purchaser, or encumbrancer, dealing concerning property, of which the record title appears to be complete and perfect, has information of extraneous facts, or matters *in pais*, sufficient to put him on inquiry respecting some

unrecorded conveyance. mortgage, or encumbrance, or respecting some outstanding interest, claim, or right which is not the subject of record, and he omits to make proper inquiry, he will be charged with constructive notice of all facts which he might have learned by means of a due and reasonable inquiry." And again: "Whenever a party, dealing as purchaser or encumbrancer with respect to a parcel of land, is informed or knows, or is in a condition which prevents him from denying that he knows, that the premises are in possession of a third person other than the one with whom he is dealing as owner, he is thereby put upon inquiry, and is charged with constructive notice of all the facts concerning the occupant's right, title and interest which he might have ascertained by means of due inquiry": 2 Pom. Eq. Jur. §§ 613, 615.

As it is conceded that the plaintiff Mrs. Petrain was in the actual possession of the property at the time of the sale, and that by reason thereof the defendants were put on inquiry, they must therefore stand charged with constructive notice of whatever right, title or interest Mrs. Petrain had in the property which might have been ascertained by means of due and reasonable inquiry. The question, then, for our determination is, what right, title, or interest had Mrs. Petrain in the property in controversy at the time of the sale of it? This question is entirely one of fact, and is to be ascertained wholly from the evidence. The defendants claim there is no evidence sufficiently clear and decisive to show that Mrs. Petrain had any right or interest in the property other than bare occupancy, and if this is so, it is immaterial whether they prosecuted the inquiry which her possession made incumbent upon them. It is important, however, that the evidence should sustain their contention, for if its examination should satisfactorily disclose that Mrs. Petrain had some equitable right or interest in the premises, they must suffer the consequences of their omission to

make due inquiry and stand charged with notice of her title.

The evidence shows that Mrs. Petrain and Mrs. O'Brien are sisters and the daughters of Mrs. Showers, now deceased, and that Wm. Showers, an important witness, was her husband; that Mrs. Showers died without a will, but that prior to her death she was paralyzed and unable to attend to her affairs; that there was the sum of three thousand dollars, which came from her, deposited in one of the banks of the city in the name of her daughter, now Mrs. O'Brien, at the time of her death. Mrs. Petrain testifies that this money was deposited in the bank in her sister's name for convenience, owing to the inability of her mother to attend to any business; but Mrs. O'Brien testifies that it was a gift from her mother, and was deposited in the bank by her and as her property. However this may be, there are many circumstances which lend countenance to Mrs. Petrain's version of the matter. With two thousand and five hundred dollars of this money Wm. Showers bought a piece of property upon which there was some talk of building a house for Mrs. Petrain. In respect to this matter, Wm. Showers testifies that "Mrs. O'Brien made the remark, and had at different times, that she wanted Mrs. Petrain to have as much as she did, and she wanted to divide with her; and that I told her that this was a small piece of ground to divide; neither of you will have anything when you get it divided up. She said it was very small. I said I had a half block in the lower end of the town ( Couch's Addition ) that I would give her for this lot, which was worth one thousand dollars more than this, but that I would turn it over to you, as you want it for that purpose. She was rather anxious to do it; so we made the transfer, and at the same time—perhaps not at the same time, but after that—they got to talking about building the house, and they asked me how they would get at it. I told them they could leave one lot in my name and I would"— Here being interrupted as to what "the understanding

was between all the parties — Mrs. Petrain, Mrs. O'Brien, and yourself — that the property was to be owned," he answered: "My understanding all the time was that the lot which was deeded to me was to go on Mrs. Petrain's; that when she wanted to build her house there, to give her that lot; that is, turn that property over to her."

He then proceeds in substance to testify that the understanding was that "one of these ladies should have two lots and the other two lots;" that "they agreed among themselves that they were to leave one lot in my name for to build a house upon the other lot;" that he traded that lot, which he held, to Alfreds to build a house upon the other lot, and that it was built for Mrs. Petrain, who has occupied it ever since. Upon cross-examination, he said that Mrs. O'Brien "suggested the idea that she wanted to divide with Annie" (Mrs. Petrain); and when asked if "she simply said she wanted to make Annie a gift," he answered: "No, not a gift; that word wasn't used. She said she wanted to divide with Annie; that the money had been left in her name, and she wanted to divide with Annie."

It is evident, in view of all the circumstances, that Mr. Showers understood from Mrs. O'Brien that she did not claim that the whole of the money belonged to her, — that it was only deposited in the bank in her name, — but that she recognized that her sister Mrs. Petrain was entitled to her share of it, and that the object of the exchange of property was to make an equal division between them. To aid Mrs. O'Brien in carrying out this purpose, he was willing to give them property more valuable than he received. He would hardly have done this unless he understood the arrangement and the object to be accomplished by it. And in pursuance of this arrangement, his evidence shows that the exchange of property was made; that one lot was left in his name to be used in building a house on the other lot for Mrs. Petrain; that he deeded the lot to the contractor for building a house on the other lot, and that Mrs. Petrain immediately

went into the possession of it and has so remained in possession ever since, covering a period of several years. Evidently the division which Mrs. O'Brien desired to make was fully accomplished when the house was built on the lot and Mrs. Petrain went into possession of it with her family. The reasons given why none of the property was put in the name of Mrs. Petrain, was that her husband was not doing much at that time, and they were somewhat involved in debt. It was also intimated at the argument that the mortgage was given for improvements, the bulk of which was to cover street and sewer assessments. Mr. Showers' evidence is supported by Mrs. Petrain and Mr. Petrain, and in many particulars by Mrs. O'Brien, though she claims that the property in question belonged to her. It is conceded by her counsel that she often expressed the desire to divide with her sister, or give her the property in question; but their contention is, that she changed her mind and concluded not to give it to her sister.

Mrs. Petrain testifies that Mr. Kiernan, one of the defendants, was informed of her ownership of the property, and he stated that he had not purchased the same, but that Mr. Kern had purchased it; and she also says that Kern knew he had no right to buy it, as she had had a conversation with him several weeks prior to his purchase, giving him notice of such ownership. Mr. Petrain testifies that prior to the sale he met Mr. Kiernan, and informed him that the property belonged to Mrs. Petrain. Mr. Kern contradicts them, and states that he had purchased the property prior to this conversation. There was an allegation of fraud, but we have not deemed it necessary to refer to it, or lay any great stress on the fact that the property was sold for a sum considerably less than its value.

In view of the evidence and all the surrounding circumstances, we are unable to see that there was any error, and must affirm the decree.