Argued 29 June, decided 13 July, 1903.

## HAWLEY v. HAWLEY.

[73 Pac. 3.]

VENDOR AND PURCHASER — SUFFICIENCY OF EVIDENCE.

1. In a suit by the obligee in a bond for the conveyance of real estate to compel specific performance, evidence *held* insufficient to show either a transfer of the bond by plaintiff or a ratification of an unauthorized assignment of it in her name by her husband.

VENDOR AND PURCHASER — POSSESSION AS NOTICE OF EQUITIES.

2. A purchaser of real property finding a person other than the vendor in possession is bound at his peril to inquire with reasonable care as to the rights of such occupant, and is chargeable with whatever facts would be disclosed by such an inquiry.

From Lane: JAMES W. HAMILTON, Judge.

Suit by M. J. Hawley against W. B. Hawley and others, in which there was a decree for plaintiff, and some of the defendants appeal.            AFFIRMED.

For appellants there was a brief and an oral argument by *Mr. A. C. Woodcock.*

For respondent there was a brief over the names of *J. C. Johnson* and *F. G. Eby,* with an oral argument by *Mr. Johnson.*

MR. CHIEF JUSTICE MOORE delivered the opinion.

This is a suit to compel the specific performance of a contract to convey real property. The facts are that on August 1, 1899, the defendant D. G. McFarland, being the owner in fee simple of lot 4 in block 5 of his Second Addition to Cottage Grove, Oregon, executed to the plaintiff, Mrs. M. J. Hawley, a bond for a deed, covenanting to convey said lot to her on or before one year therefrom, upon payment to him in the meantime of the sum of $100 and interest thereon at 8 per cent per annum ; and, having been permitted to take possession of the premises, she built a house and barn thereon, and has ever since been in the possession thereof. Her husband, the defendant W. B. Hawley, on March 26, 1900, purchased from the defendant

Mathew Sehr an interest in a stock of goods for the sum of $800, and in payment thereof delivered said bond, upon which was indorsed an assignment, purporting to have been subscribed by the plaintiff to the said Sehr, who, on April 28, 1900, assigned the same to Mrs. C. M. Brown. The plaintiff, on May 31, 1900, served a written notice on McFarland to the effect that she was the owner of said bond, tendered to him the sum due thereunder, and demanded the execution of a deed to said lot, but he, refusing to comply therewith, on August 1, 1900, executed a deed of the premises to Mrs. Brown, who commenced an action against Mrs. Hawley to recover possession thereof, whereupon the latter, having filed an answer therein, commenced this suit in the nature of a cross-bill, alleging the facts, in substance, as hereinbefore stated ; that Mrs. Brown was not an innocent purchaser of the premises ; and deposited in court the sum due McFarland on the bond. The defendants in separate answers denied the material allegations of the complaint, and alleged new matter therein, which having been denied in the replies, a trial was had, resulting in a decree requiring Mrs. Brown, upon the receipt of $100 and interest, to execute to Mrs. Hawley a good and sufficient deed to said lot, and perpetually enjoining the further prosecution of said action at law, from which the defendants appeal.

1. It is contended by defendants' counsel that, when the bond was first assigned, the plaintiff knew that her name was subscribed thereto, and ratified the transfer, and hence the court erred in rendering the decree complained of. Mrs. Hawley, as a witness in her own behalf, testifies that she did not subscribe her name to the assignment of the bond, nor authorize any person to do so for her, nor did she know that it had been assigned until about the last of May, 1900. Her husband, as her witness, testifies that

*43 Or.—23.*

he appended her name to the assignment of the bond, thinking that their marital relations authorized him to do so. Sehr, as a witness in his own behalf, testifies that, before selling his interest in the stock of goods to Hawley, he examined the house on the lot in question, which he knew was owned by Mrs. Hawley, and that she told him on that occasion she did not want to trade off her property. In speaking of the sale of his interest in the goods, he further says: "When we made the trade, I told Hawley to bring his wife down and fix the matter up. In place of bringing her, he brought the bond down already signed, and handed it to me." We are satisfied, from an examination of the testimony, that Mrs. Hawley did not subscribe her name to the assignment indorsed on the bond, and assuming, without deciding, that the method adopted, if thereafter ratified, was sufficient to transfer her equitable interest in the lot, the only question to be considered is whether she ratified her husband's act in signing her name thereto.

One William Cummings had been a partner with Sehr, but, upon the latter's retirement by the sale of his interest in the goods, Hawley became a member of the new firm. The old firm of Sehr & Cummings, at the time it was dissolved, was indebted to a Mrs. S. E. McKinney on a promissory note, and on March 26, 1900, Hawley and his wife and Cummings executed a new note to Mrs. McKinney, and the old one was surrendered, thereby discharging Sehr. This note not having been paid at maturity, Mrs. McKinney commenced an action thereon about the last of May, 1900, and attached the goods in the store, upon the seizure of which Mrs. Hawley served a written notice upon McFarland that the bond belonged to her, and she testifies that this was the first intimation she had of the assignment. She further testifies that she had nothing to do with the store, but upon the goods being attached she

found she was liable for the debt, and assisted in the collection of the accounts belonging to the new firm, and applied the money collected in discharging the debt, saying that she did not consider she had an interest in the store until it was attached. Cummings, as defendants' witness, testifies that Mrs. Hawley was never in the store conducting business, though she remained around there occasionally. Hawley, as a witness for the plaintiff, in answer to the question : " Isn't it a fact that your wife has allowed her name in mercantile transactions, on account of your being embarrassed?" replied: "Yes, sir." Mrs. McKinney, as defendants' witness, in speaking of a conversation she had with Mrs. Hawley, prior to the attachment, concerning her interest in the store, testifies as follows: " She told me she didn't want to trade the property for the store ; didn't have any peace until she gave up to it; she was sorry she did so." Mrs. Hawley, in speaking of the note executed to Mrs. McKinney, testifies that she did not know what it was given for, except that her husband wanted to use the money in the store, and she signed the note as security for him, and, referring to the testimony of Mrs. McKinney, she further says: "If I remember right, he had been talking trade. I said I was sorry if I had to give up and trade the property off." This is the material testimony by which the defendants seek to show that Mrs. Hawley ratified her husband's assignment of the bond.

Mrs. McKinney's testimony would strongly tend to support the view contended for by the defendants' counsel if it were entitled to the credit claimed for it. Her note was given March 26, 1900, and, in speaking of the year when it was executed, she said it was 1890. Her attention having been particularly called thereto, however, she corrected the statement by saying it was in 1899, but, the plaintiff's counsel having remarked that it was in 1900, she replied ;

"Yes, sir; that is right." What Mrs. McKinney's age is cannot be ascertained from an inspection of her testimony, for she neglected to answer that part of the preliminary question in respect thereto. She testifies, however, that when her note was made she was unable to attend to the matter, and her daughter arranged it for her. From this testimony we conclude that her age has somewhat impaired her memory, for if Mrs. Hawley made the declaration imputed to her, to the effect that she yielded to her husband's importunity to effectuate the trade, it is altogether probable she would have evidenced her consent by signing the indorsement made upon the bond. Sehr's statement that she did not desire to exchange her property for the store is a circumstance tending to corroborate her, and, with the other testimony referred to, leads us to conclude that she never ratified her husband's act in subscribing her name to the assignment of the bond.

2. Sehr and Mrs. Brown knew that Mrs. Hawley was in possession of the property in question, and yet neither of them made any inquiry of her concerning her rights therein or in relation to her pretended transfer thereof. This knowledge was sufficient to put them upon inquiry, which, if prosecuted with reasonable diligence, would have disclosed her rights in the premises: *Bohlman* v. *Coffin,* 4 Or. 313; *Petrain* v. *Kiernan,* 23 Or. 455 (32 Pac. 158); *Cooper* v. *Thomason,* 30 Or. 161 (45 Pac. 296). Instead of pursuing this course, the legal title was secured by Mrs. Brown in an attempt to defeat Mrs. Hawley's equity; but, as Mrs. Brown is not an innocent purchaser, the legal title must yield to the superior equity, and hence the decree is affirmed.          AFFIRMED.