Argued August 15, decided October 15, 1912.

## LA FOREST v. DOWNER.*

(126 Pac. 995.)

**Principal and Agent— Knowledge of Agent— Imputation to Principal.**

1. Notice, actual or constructive, to an agent in taking a mortgage that the mortgagor holds title in trust for his grantor, is notice to the principal.

**Mortgages—Constructive Notice.**

2. Defendant's continued possession of land after deeding the same, under an oral agreement that the grantee would hold the title in trust for her, was not such constructive notice to the grantee's mortgagee as to put the latter upon inquiry as to defendant's rights.

**Mortgages—Notice of Adverse Claim—Burden of Proof.**

3. In mortgage foreclosure, the burden was on the mortgagor's grantor to show that the mortgagee or his agent had actual notice of her claim, based upon the mortgagor's oral promise to hold the property in trust for her.

**Mortgages—Adverse Claims—Right to Assert.**

4. Where a mortgagee's agent at first refused to lend money because the property had been attached as equitably belonging to the mortgagor's grantor, and the loan was induced by such grantor's written statement that the morgagor held absolute title, the grantor is not entitled to assert want of good faith on the mortgagee's agent's part in failing to make inquiry as to her rights.

---

*The authorities on the question of possession of land as notice of title are collated in an elaborate note in 13 L. R. A. (N. S.) 49.   REPORTER.

From Multnomah:   JOHN P. KAVANAUGH, Judge.

Statement by MR. JUSTICE McBRIDE.

This is a mortgage foreclosure by Eugene La Forest against Charles Downer, C. P. Downer, his wife, Union Guaranty Association, a corporation, R. T. James, Fox & Co., a corporation, New Era Paint Co., a corporation, Julius H. Lensch, Elam Shaw and Julia O'Connell. The facts are as follows:

In July, 1908, defendant Julia O'Connell was the owner of the north one-half of lots 1 and 2 in block 3 in Howe's addition to the City of Portland. On July 29, 1908, Mrs. O'Connell, being in litigation with her husband and other parties, applied to Charles Downer and his wife, who were friends of hers, for counsel and advice in her troubles, and, acting upon Downer's advice, gave him a warranty deed to the property, which recited a consideration of $1.00, upon the verbal promise by him to hold it in trust for her. She continued to reside upon the property until after the execution of the mortgage hereafter mentioned. In October, 1908, Charles Downer applied to William G. Beck, who was engaged in the business of loaning money, for a loan of $1,000 upon the property, and produced an abstract showing the title to be vested in him. It was discovered by Beck that Piggott & Finch, a firm of attorneys, had brought an action against Mrs. O'Connell for attorney's fees and had attached the property as hers. Whereupon Beck notified Downer that the loan would not be made until the matter was arranged, and thereafter Downer, by fraudulently assuring Mrs. O'Connell that such a writing was for her protection, induced her to sign the following letter, prepared by him:

"Portland, Oregon, October 9th, 1908.

"Mr. Wm. G. Beck:

"I sold my wright and tittle to the North End of Lots One and Two (1. & 2.) and Lots Eight Nine and Ten (8. 9. & 10) Block Three. (3) In Howe's Addition to

the City of Portland, County of Multnomah, To Charles. Downer, and recived A satisfactory price therefrom, And be it further understood that the Summons I recived from from Messrs. Piggott and Finch, have nothing to do with the Sail of the Property. As Mr. Downer was the Owner of the Property before I signed Eney papers in Piggott & Finch Office to open A new suit Against Dennis. O'Connell, And Mr. Downer, with his Own monney Paid to the said Piggott and Finch. The sum of Three Hundred and Fifty Dollars for Me. For which I have now a receipt paid in full,

> "Yours respectful
> "Mrs. Julia O'Connell."

Upon the receipt of this, the loan was made, Beck paying out of the money advanced $170 to satisfy the claim under the attachment. Downer, after placing mortgages to the amount of $4,200 upon this and other property of Mrs. O'Connell, absconded. This suit was brought to foreclose the mortgages. Downer defaulted, and Mrs. O'Connell defends upon the ground that plaintiff took the mortgage with notice of her equities. There was a decree for defendant, and plaintiff appeals.

REVERSED.

For appellant there was a brief and an oral argument by *Mr. Walter S. Hufford.*

For respondent, Julia O'Connell, there was a brief over the names of *Messrs. Manning & White,* with an oral argument by *Mr. Sam White.*

MR. JUSTICE MCBRIDE delivered the opinion of the court.

1, 2. We are satisfied from the testimony that the plaintiff himself had no actual notice of the claim of Mrs. O'Connell nor of her possession of the premises; but if under the circumstances his agent, Beck, had actual notice, or such constructive notice as would put a reasonable man upon inquiry, such notice must, as a matter of law, be imputed to plaintiff. On behalf of the respond-

ent, it is claimed that her continued possession of the premises after the execution of the deed to Downer was such constructive notice as to put plaintiff upon inquiry as to her rights in the premises, and that he is chargeable with notice of all facts which such inquiry would have elicited. In some jurisdictions such has been the holding of the courts. *Pell* v. *McElroy,* 36 Cal. 268; *Brinkman* v. *Jones,* 44 Wis. 498; *Hopkins* v. *Garrard,* 7 B. Mon. (Ky.) 312; *Grimstone* v. *Carter,* 3 Paige (N. Y.) 420 (24 Am. Dec. 230) ; *I. C. R. R. Co.* v. *McCulloch,* 59 Ill. 166. But the rule announced in these and other cases is not followed in this State. In *Exon* v. *Dancke,* 24 Or. 110 (32 Pac. 1045), the rule was stated by Mr. Justice BEAN in the following language:

"A purchaser from a vendee whose vendor remains in possession is not bound to inquire further as to the title, when he finds on record a deed from such vendor, properly conveying the title to the person from whom he is about to purchase. Any inquiry suggested by such possession is fully answered by the record, and is prosecuted sufficiently far when the examination of the record discloses a deed from the person in possession to the person who offers to sell, and who is claiming and asserting title under such deed."

This holding is supported by a large preponderance of the decisions of other courts, which are found collated in 13 L. R. A. (N. S.) 58, in note to *Garbutt* v. *Mayo,* 128 Ga. 269 (57 S. E. 495).

3, 4. This places upon defendant Mrs. O'Connell the burden of showing that plaintiff or his agent, Beck, had some other actual notice of her claim that would have led an ordinarily prudent man to have made some inquiry, and that, in consequence of his failure to have done so, plaintiff is chargeable with knowledge of every fact which such inquiry would have developed. The evidence shows that the attachment of Piggott & Finch

was brought to the notice of Beck, and that he hesitated to loan the money until Mrs. O'Connell in the most solemn manner assured him in writing, signed by her, that Downer was the owner of the property. No question of estoppel arises here. It is a question of Beck's good faith in making inquiry; and, if defendant allowed herself to be persuaded to sign a paper containing what she knew was an absolute falsehood in regard to the title, she should not now be heard to say that plaintiff or his agent acted in bad faith in relying on her statements. It is a severe case for defendant, but the rule that, where one of two innocent persons must suffer, he whose negligence placed it in the power of another to inflict the injury should be the one to take the consequences, applies here with peculiar force. Mrs. O'Connell deceived Beck by a falsehood, and now says that he is guilty of constructive *mala fides* for believing her statements.

The decree of the circuit court is reversed, and a decree will be entered here for plaintiff, with costs.

REVERSED.