Argued December 11, 1969, decree modified May 13, 1970

WEBB, *Appellant, v.* STEWART ET AL,
*Respondents.*

469 P2d 609

*George H. Layman*, Newberg, argued the cause and filed briefs for appellant.

*David J. Krieger*, Portland, argued the cause for respondent Wilson. With him on the brief were Black, Kendall, Tremaine, Boothe & Higgins and James T. Duncan, Portland.

Before PERRY*, Chief Justice, and McALLISTER, SLOAN, O'CONNELL, DENECKE and HOLMAN, Justices.

---

* Perry, C. J., did not participate in this decision.

O'CONNELL, J.

Plaintiff Jodie Webb brought this suit in equity to cancel a deed from plaintiff to defendant Myron J. Stewart covering plaintiff's residence property along with deeds subsequently made by Stewart to defendant Cascadia Development Incorporated, and also to cancel a trust deed which Cascadia executed to secure a loan from defendant Ethel M. Wilson.

The trial court entered a decree cancelling the deeds to Stewart and Cascadia but held that the trust deed with Ethel M. Wilson as beneficiary was a prior lien and superior to plaintiff's claim of title. The effect of the trust deed is challenged by plaintiff on this appeal.

In October, 1967 Webb was living alone following the death of his wife. He was 78 years old and retired. At his request, a contractor sent defendant Myron Stewart to plaintiff's residence to put a new roof on the house. Stewart noticed a "for sale" sign on the property and offered to purchase the property. Plaintiff accepted the offer and on October 26 Stewart gave plaintiff a note for $4,000 as earnest money in accordance with the terms of an earnest money receipt prepared by Stewart and which plaintiff signed. Stewart explained that he had considerable business experience and that there was no need to consult an attorney. Two days later, on October 28, Stewart returned with additional papers for plaintiff to sign, explaining that these papers would be put in escrow. One of the papers was a deed which plaintiff signed in the presence of a notary public. Webb testified that he did not know what he was signing. Stewart took the deed with him. Sometime in November plaintiff received a $1,000 payment on the note, but he never saw

Stewart after the day he signed the deed in the notary's office.

When Stewart failed to return with the promised payments, plaintiff became impatient and finally on the advice of his son went to the courthouse where he discovered that he had signed a deed which Stewart had recorded on October 30. It later developed that Stewart had also executed and recorded a deed to Cascadia Development Incorporated.

Before he obtained the deed from the plaintiff, Stewart had entered into negotiations with Rowley, a real estate loan broker with whom he had previously done business. They discussed a possible loan on the property in question (the recorded title then being in the name of Webb) and Rowley subsequently met Stewart at the Webb property where Rowley inspected the contemplated security and at that time had a conversation with plaintiff which, according to Rowley, indicated that plaintiff was proceeding on the assumption that the property had been sold. Thereafter, the deed to Stewart was recorded and Rowley arranged a loan of $8,500 which was secured by a trust deed. As Stewart had conveyed to the corporation, the trust deed was executed by Cascadia Development Incorporated as grantor, Transamerica Title Insurance as trustee, and Ethel Wilson as beneficiary. The trust deed was executed on November 7 and recorded that same day. Stewart signed the trust deed as president of Cascadia Development Incorporated.

The trial court found that Stewart fraudulently induced the execution and delivery of the deed given by Webb. Accordingly, the deed to Stewart and the deed from Stewart to the corporation were held voidable and were cancelled as of December 6, 1967 (the date

the suit was filed). However, the trial court found that Ethel Wilson had acted in good faith and without notice of Stewart's fraud when she accepted the trust deed as security for her loan. The trust deed was therefore held to be a prior and valid lien on plaintiff's property.

The trial court also decreed that plaintiff was entitled to $5,500 held in escrow by the title insurance company (as trustee of the trust deed). Webb was also awarded judgment for $8,500 against Stewart and the corporation, subject to an offset of the sum held in escrow.

Plaintiff assigned as error the cancellation of the deed to Stewart as of the filing date of the suit instead of the date of the instrument. He argues further that the court erred in finding Wilson's trust deed to be a prior lien. He contends that his deed to Stewart was void when it was given and therefore could not vest any rights in third parties. In the alternative, he contends that if the deed was merely voidable until the entry of a judicial decree, Wilson cannot claim as a bona fide purchaser because Webb was in possession during all the transactions and that his possession was sufficient to impart notice of his interests adverse to the record title.

Plaintiff contends that there was no delivery of the deed because plaintiff assumed that the paper he was signing was a contract and not a conveyance, and further that even assuming plaintiff knew that the instrument was a deed it was handed to Stewart upon the express understanding that it would be placed in escrow and not delivered to the grantee until the purchase price was paid.

■ The trial court, ruling from the bench, made the following finding:

> "I * * * make this fact finding, he did know it was a deed; but he thought it was to be held in escrow. He said * * * 'I didn't know what I was signing,' but I deduced that he, at least, had the gist that he was signing a paper that was to be held in escrow, and from that I deduce that he realized that he was * * * signing a paper that would convey title after the proper prerequisites were met."

We make the same deductions as those made by the trial court. We have, then, a situation in which a grantor hands a completely executed deed to the grantee with the intent that the title is not to pass until the purchase price is paid and the grantee then records the deed and thereafter purports to convey an interest in the property to a third person who is unaware of the fact that the purchase price has not been paid. Assuming that plaintiff's possession was not sufficient to put defendant Wilson on notice of plaintiff's interest in the property, we are of the opinion that plaintiff is estopped to assert a claim to the property against Wilson.

It has been said that "[e]ven though a grantor has no intention to deliver, if he or his possessory agent permits the named grantee to secure possession of the instrument, the grantor will be estopped to deny delivery as against a subsequent innocent purchaser or encumbrancer for value and without notice. This rule is based upon the principle that, as between two innocent parties, the one who has made it possible to perpetrate a fraud should suffer the loss."①

---

① Burby on Real Property, p. 424 (2d ed 1954). Burby cites as authority, Tutt v. Smith, 201 Iowa 107, 204 NW 294, 48 ALR 394

■ The Oregon cases leave some doubt as to the circumstances under which the foregoing rule is applicable. It is quite clear that where the named grantee obtains the deed from an escrowee, the grantor prevails in the absence of an estoppel.[⊗]

On the other hand, where the third person who is entrusted with the deed is the grantor's agent rather than an escrowee there are Oregon cases holding that a bona fide purchaser from the agent prevails as against the grantor.

*Harth v. Pollock*, 97 Or 663, 193 P 202 (1920) is illustrative. A real estate broker informed the owner of a parcel of land that he had a purchaser for the property. At the broker's request the owner executed and acknowledged a deed with the name of the grantee left blank. The deed was handed to the broker upon the express condition that he would hold it until the conditions of the sale were met. The broker inserted

---

(1925), a case closely in point with the case before us. The case is summarized in Burby, *supra*, as follows:

"* * * An application of this rule is found in Tutt v. Smith, wherein the grantors handed a deed to their agent with directions that he take it to a named party who was to hold it in escrow. No escrow was in fact created. The named grantee secured possession of the deed and purported to convey to an innocent purchaser. The innocent purchaser was protected. Although the grantors were in possession of the land at the time the fraudulent grantee purported to convey title, it was held that possession by his grantors was not constructive notice of their claim."

[⊗] Zoharopulos v. Hamilton, 108 Or 201, 216 P 184 (1923) (chattel mortgagor who assumed vendor's obligations, placed mortgages and notes with escrowee, bank managing agent, with delivery contingent on testing of livestock for disease); Sabin v. Phoenix Stone Co., 60 Or 378, 118 P 494, 119 P 724 (1911) (trust company escrowee was instructed to deliver deed upon grantee's payment of promissory notes); Tyler v. Cate, 29 Or 515, 45 P 800 (1896) (escrowee, a real estate agent, was to deliver deed when corporate grantee executed mortgage).

his own name as grantee, recorded the deed and then executed a mortgage to a third person who had no knowledge of the transaction between the grantor and the broker. The court held that the mortgagee prevailed, reasoning as follows:

> "* * * When a man leaves with a stranger an instrument executed and acknowledged with every legal formality necessary to indicate that he has made a conveyance of the property, but with the name of the grantee left blank, he ought in common prudence to contemplate the possibility that the depositee, if dishonest, might make an improper use of such instrument, and if such use is made of it he, and not the person whom he has put it in the power of his agent to defraud, ought to suffer the loss." 97 Or at 678.

Other Oregon cases have applied the same principle.[9]

---

[9] Bechtel v. Bechtel, 162 Or 211, 91 P2d 529 (1939); Hansen v. Bellman, 161 Or 373, 88 P2d 295 (1939); Rohrbacher v. Wright, 99 Or 186, 195 P 343 (1921); Rohrbacher v. Strain, 95 Or 1, 176 P 990, 186 P 583 (1920). In some of the foregoing cases the agency is described as an "escrow." The confusion in language is noted by Lester D. Pederson in an excellent comment entitled Escrows—Defalcation of Escrow Holder—Allocation of Loss to Vendor or Vendee—Agency and Trust Theories, 31 Or L Rev 218, 226 (1952):

> "The Oregon cases which have considered the escrow holder as an agent have involved the question of an unauthorized delivery of a deed by the depositary. There are cases in which the court has referred to the terms of an escrow and in which the holding is based squarely on agency principles. [Harth v. Pollock, 97 Or 663, 193 P 202 (1920); Rohrbacher v. Wright, 99 Or 186, 195 P 343 (1921); Rohrbacher v. Strain, 95 Or 1, 176 P 990, 186 P 583 (1920).] In each such case, the grantee's name was not filled in in the deed delivered to the third party, who was to find a purchaser. A valid escrow was not created in these cases because of the absence of an underlying contract. However, the language in these cases does indicate a looseness of thought for the reason that the term 'escrow' was used when in fact a valid escrow could not be found and for the reason that an escrow problem was confused with an agency problem. A more recent case, Hansen v. Bellman, [161 Or 373, 88 P2d

On the other hand, there are other Oregon cases holding in favor of the grantor where he has handed the deed to the grantee or the grantor's agent. Thus in *Allen v. Ayer*, 26 Or 589, 39 P 1 (1895) the court held that the grantor who remained in possession prevailed where his agent handed the deed to the grantee for inspection and the grantee then conveyed to a bona fide purchaser.

In *Burns v. Kennedy*, 49 Or 588, 90 P 1102 (1907) the grantee obtained the deed on the representation that she wished to show it to her husband. She recorded the deed and then conveyed the property to a third person. The grantor was in possession of the property. The court held for the grantor, resting the case on the ground that there was no delivery to the grantee. The court did not discuss the principle of estoppel.

In *Telschow v. Quiggle*, 74 Or 105, 109, 145 P 11 (1914) the grantor signed and acknowledged a deed leaving the name of the grantee blank. The grantor handed the deed to his agent authorizing him to trade the land for farm land of equal value. The agent filled in the name of a third person (who knew of the agent's instructions) and delivered the deed in exchange for residential property. The land was then conveyed to a purchaser who had no knowledge of the grantor's instructions. The grantor had remained in possession. The court held that the purchaser acquired no title for the reason that "[a] deed that is delivered to the

---

295 (1939) ] cited these cases for the proposition that, where a principal places it within the power of his agent to defraud innocent parties, he must suffer the loss. In this case the court was careful to establish that it was not confronted with an escrow and therefore the holding was based squarely on the law of agency."

grantee, without the express or implied consent of the grantor to the effect that the deed shall pass irrevocably from his control, conveys no title to the grantee. Such a deed would be of no more force than one with a forged signature." The court stressed the fact that the grantor remained in possession of the land, indicating that such possession may be sufficient to put third persons on notice of grantor's claim.

These latter cases (*Allen*, *Burns*, and *Telschow*) can all be explained on the ground that the ultimate purchaser was put on notice of grantor's interest by his retention of possession.

However, there is language in each of them which indicates that the court felt that even if the grantor does not remain in possession, the innocent purchaser does not acquire title because title does not pass from the owner for lack of delivery. If this is the principle which these cases purport to apply, they are implicitly overruled by the later cases already mentioned where no delivery was effected and yet the grantor was held estopped to assert his title.

It is of course possible to reconcile some of the earlier cases with the later pronouncements by distinguishing the circumstances under which the deed left the possession of the grantor, finding an estoppel where the grantor acts without due caution for the protection of those who might be misled. This was the manner in which *Harth v. Pollock, supra* distinguished *Allen v. Ayer, supra*. The court said:

"While the case of Allen v. Ayer, 26 Or 589 (39 Pac 1), cited by counsel for appellant, has some features in common with the case at bar, there were other circumstances which distinguish it in principle. In that case the deed was not intrusted by the grantor to a stranger, but to a prominent and trust-

worthy member of the Oregon bar, and was obtained from him by false representations, he being guilty of no fraud upon the ultimate purchaser. Under all the circumstances the court held that the grantor was not negligent in depositing the instrument with Judge Chenoweth to abide the event of the proposed trade, and, possession of it having been obtained by trick, that there was no delivery to the alleged grantee. But in that case the grantor was in the actual possession of the property and it does not appear that the purchaser took any pains to discover the nature of his possession." 97 Or at 679.

Whether or not our previous cases can be reconciled, we are of the opinion that plaintiff's conduct in placing the fully executed deed in the hands of the grantee was unreasonable under the circumstances. Those who wish to enter into real estate transactions in which title is to be retained until certain conditions of the bargain are met have available to them the escrow device as a method of protecting themselves and others. There is, of course, the risk that the escrowee will violate the escrow instructions and surrender the deed prematurely, but this risk is minimal and if a grantor puts his deed with a reputable escrowee, he does all that he can reasonably do to protect third persons and should have his interest protected if the escrowee violates his trust.

If the grantor fails to use this available means of minimizing the fraudulent use of his deed, he should bear the loss as against a purchaser who has no knowledge of the fraud or of facts which would put him on inquiry.

■ It is argued that plaintiff was unfamiliar with property transactions and therefore did not understand what was necessary in handling the sale of his

property to protect his interest or the interests of others. The standard of care required of those who undertake to sell their property must be measured by some objective standard. The adjustment of the rights of the parties in these cases cannot be made to rest upon the extent to which the particular grantor understands the mechanics of closing a real estate transaction. The need for an objective test of due care is as essential in these cases as it is in any other area of the law where reasonable inquiry and circumspection will help to prevent loss to others.

■■ We must next consider whether plaintiff's possession constituted constructive notice of his claim. There is a division of authority as to whether a grantor's possession puts third persons on inquiry where the grantor has fully executed a deed and permitted it to get into the hands of the grantee.[④] After noting this division of authority the court, in *Exon v. Dancke*, 24 Or 110, 32 P 1045 (1893), adopted the view that grantor's possession does not put third persons on notice of the grantor's claim. The court said:

> "We are of the opinion * * * that the reason, as well as the decided preponderance, of the authorities is to the effect that a purchaser from a vendee whose vendor remains in possession, is not bound to inquire further as to the title, when he finds on record a deed from such vendor, properly conveying the title to the person from whom he is about to purchase. Any inquiry suggested by such possession is fully answered by the record, and is prosecuted sufficiently far when the examination of the record discloses a deed from the person in possession to the person who offers to sell, and who is

___

[④] Cases are collected in 105 ALR 845 (1936). See 1 Merrill on Notice, §§ 126-128, pp. 153-156 (1952), noting the results in different jurisdictions.

claiming and asserting title under such deed." 24 Or at 114-115.

The view thus expressed was affirmed in *La Forest v. Downer*, 63 Or 176, 126 P 995 (1912).

However, subsequent Oregon cases contain language indicating a view contrary to that expressed in the *Exon* and *La Forest* cases. Thus, in *Telschow v. Quiggle*, 74 Or 105, 111, 145 P 11 (1914), discussed above, the court after holding that there was no delivery of the deed, went on to consider the effect of grantor's continued possession:

> "The authorities are inharmonious as to the effect of a grantor's possession of the premises which he has conveyed after the execution of a deed, and whether his possession under these circumstances is such that a person contemplating the purchase or acquiring some interest in the land is compelled to take notice of the rights of such grantor which may exist *dehors* his deed."

The court then concluded as follows:

> "* * * After careful examination of many authorities, we find in no case, where a deed executed and acknowledged with the name of the grantee left blank, and afterward fraudulently inserted, where the grantor has remained in the open and notorious possession of the premises, that a deed to a third person claiming to be an innocent purchaser has been upheld."

And in *Harth v. Pollock, supra*, holding that the grantor was estopped to assert his title against an innocent purchaser for value under the circumstances, the court distinguished *Allen v. Ayer, supra*, which held in favor of the grantor, by noting:

> "* * * But in that case the grantor was in the actual possession of the property and it does not

appear that the purchaser took any pains to discover the nature of his possession." 97 Or at 680.[5]

We think that the ambiguity created by the conflicting statements in our cases as noted above should now be resolved, and in resolving it we adopt the rule that grantor's continued possession after the execution of a deed by him puts third persons upon inquiry as to the grantor's interest.[6]

■ It is well established that the possession of persons other than the grantor will put a purchaser upon inquiry as to the possessor's interest.[7] As the court in *Groff v. State Bank of Minneapolis*, 50 Minn 234, 238, 52 NW 651 (1892) observed: "there is no good reason for making a distinction between possession by a stranger to the record title and possession by a grantor after delivery of his deed. In either case the possession is a fact inconsistent with the record title, and, if possession by the stranger is sufficient to make it obligatory upon a purchaser to ascertain his right,

---

[5] Note also Allen v. Ayer, 26 Or 589, 39 P 1 (1895) where the court, in holding that grantor was not estopped, mentions the fact that the grantor remained in possession.

[6] It has been assumed by at least one writer that the rule we now adopt was previously adopted in this state. See Note, 2 Or L Rev 67, 68 (1922):

"* * * Suppose the property owner remains in actual occupancy of the land throughout. Then the innocent purchaser should not be protected because the owner's occupancy should have put the purchaser on his guard. This has been held in Oregon and is the prevailing doctrine in other states."

[7] Randall v. Lingwall, 43 Or 383, 73 P 1 (1903) (possession of tenant notice of his landlord's title); Hawley v. Hawley, 43 Or 352, 73 P 3 (1903) (possession of wife notice of her equities upon husband's attempted assignment of joint contract to purchase the land); Cooper v. Thomason, 30 Or 161, 45 P 296 (1896) (possession of grantee under unrecorded deed notice of his interest); Petrain v. Kiernan, 23 Or 455, 32 P 158 (1893) (possession by *cestui que trust* notice to grantee from legal owner).

possession by the grantor is a circumstance entitled to equal consideration."

Although there is more likelihood that the grantor's possession would be consistent with the unencumbered title in the grantee, there is still a sufficient possibility of the grantor retaining an interest in the property to warrant the imposition of a duty upon the purchaser to make inquiry. The fact that there are a substantial number of litigated cases in which the grantor in possession has a claim, indicates that inquiry will frequently disclose to the purchaser an adverse claim.[8]

Some courts have reasoned that the grantor has by his deed, in effect, declared to the world that he has divested himself of all interest in the property and that subsequent purchasers may, therefore, assume that grantor retains possession for some reason consistent with an unqualified title in the grantee. The answer to this reasoning is well stated in 5 Tiffany, Real Property § 1292, pp. 76-77 (3d ed 1939):

> "* * * One difficulty, however, with this view is that it imputes to a conveyance an effect as a declaration by the grantor, for the purpose of raising an estoppel against him, which is not necessarily in accord with the understanding of the parties or with the legal effect of the conveyance. One executing, for instance, a conveyance of a fee simple title, may perfectly well acquire, by the same or a subsequent transaction, an equity against the grantee or a lease for a limited period, and it is difficult to see why his conveyance should be regarded as a declaration that he has not acquired,

---

[8] In addition to the cases already mentioned involving fraudulent inducement or the transfer of the instrument before the conditions are fulfilled are the frequently recurring situations where the deed is in fact a mortgage, or where there is a lien for the unpaid purchase price, or where grantor is a lessee, or where the grantee holds the legal title upon a resulting or constructive trust, etc.

or will not acquire, such an interest, or why a subsequent purchaser should be justified in assuming, for the purpose of being relieved from any duty of inquiry, that the grantor's continuance in possession is wrongful rather than rightful."

After a careful review of the competing rules we believe that the conclusion reached by 1 Merrill on Notice, § 131, p. 160 (1952) is the most satisfactory and we adopt it:

> "Upon the whole, I believe the most desirable solution of the problem is to regard the grantor's continued possession as a fact provoking inquiry from those subsequently dealing with the land, regardless of its duration. This seems more in harmony with the general policy of the law that possession arouses inquiry. It seems hardly sufficient investigation to content one's self with learning from the records or from some other source that the possessor has purported to part with his title. *Non constat* that he may have gained another in some way. Inquiry from him will involve little effort or expense, and should be required ere one can attain to the ancient and honorable position of a bona fide purchaser."

■ Having concluded that defendant Wilson was put on inquiry, it is necessary to determine whether adequate inquiry was made. There is no evidence that Wilson herself attempted to ascertain whether anyone was in possession of the property. Rowley visited the premises and observed that plaintiff was in possession. Rowley testified that he "kind of jokingly said" to plaintiff, " 'Well, it looks like you've sold your house,' " and that plaintiff "confirmed that he had sold it." Rowley also asked plaintiff if he intended to sell any of his furniture or appliances when he moved and plaintiff responded that he would probably dispose of some of the items and would move " 'about the first of the

month.'" Rowley then said, "'Here's my card, and when you move, be sure and call me because there is some furniture or appliances that I would be interested in.'"

The conversation Rowley had with plaintiff does not constitute a reasonable inquiry within the meaning of the rule. The questions put to plaintiff indicated only that Rowley was interested in purchasing plaintiff's household goods. Such questioning would not invite a grantor to explain the character of the "sale" transaction he had entered into thus revealing the conditions which the grantee was to meet before title would pass. If, in that conversation, Rowley had revealed his primary interest in viewing the property, plaintiff would then have had reason to warn Rowley of the tentative character of the "sale." We hold that the inquiry was inadequate.

The cause is remanded to the trial court with directions to modify the decree consistent with this opinion.