Argued and submitted June 18, affirmed November 13, 1979,
reconsideration denied January 3,
petition for review allowed January 29, 1980

STEVENS, et al,
*Respondents,*
*v.*
AMERICAN SAVINGS INSTITUTION, INC., et al,
*Defendants,*
PUBLISHERS PAPER CO.,
*Appellant.*

(No. 96829, CA 11582)

602 P2d 669

William B. Crow, Portland, argued the cause for appellant. With him on the briefs was Miller, Anderson, Nash, Yerke & Wiener, Portland.

Michael J. Clancy, Canby, argued the cause for respondents. With him on the brief were Bettis & Reif and Raymond R. Reif, Canby.

Before Schwab, Chief Judge, and Tanzer and Roberts, Judges.

TANZER, J.

## TANZER, J.

Plaintiffs H. B. Stevens and Merl and Verla Tucker brought this suit to rescind a deed, mortgage and note between plaintiffs and defendant American Savings Institution, Inc. (American Savings), covering 85 acres of farmland and timberland in Clackamas County, Oregon, conveyed by plaintiffs to defendant, and to rescind a subsequent deed from American Savings to defendant Publishers Paper Co. (Publishers) conveying the timberland. Upon finding the conveyance by plaintiffs to American Savings to have been tainted by the fraud of its president, defendant Fernandez,[1] the trial court entered its decree rescinding the instruments as prayed for, and further gave Publishers judgment against American Savings for the amount Publishers paid for the timberland.[2] Only Publishers appeals, contending here as it did in the trial court that it purchased the timberland for value and without notice of plaintiffs' claims thereto; and therefore that, as against plaintiffs, Publishers should be declared the owner thereof.

At the time of their transaction with American Savings, about one-third of plaintiffs' 85 acres had been cleared for farming, and the rest was timberland. The Tuckers had lived in a house on the farm portion until 1972, when they moved to Vancouver, Washington. Plaintiff Stevens remained on the property, and so through the trial of this suit continued to live in a mobile home near the house. When plaintiffs decided early in 1974 to sell the property, the timberland

---

[1] The trial court found that "[n]o distinction can be made between Fernandez and ASI [i.e., American Savings], since Fernandez was the president of the corporation and capable of binding it. Also, none of the parties, including defendant Publishers made any distinction between the two." We agree, and our further reference to either defendant should be read as a reference to both of them.

[2] In addition, plaintiffs tendered into court $15,000 representing the payment to them by American Savings. The order provides for a credit against the judgment from American Savings to Publishers for whatever part of the $15,000 is found after further hearing to be payable to Publishers. This provision is not specifically contested.

[193]

portion was inspected at their request by Robert Booth, a Publishers employee who conducted timberland appraisals and acquisitions. Following a brief on-site inspection, Booth delivered to plaintiffs a written offer of $100,000 for the entire 85 acres, the offer consisting of an offer of $85,000 by Publishers for the timberland and a further offer of $15,000 by Booth privately for the farmland. Plaintiffs refused the offer, and subsequently advertised the property through several realtors over the nearly two years that followed at a sale price of $155,000.

On January 20, 1976, Stevens was visited on the property by his realtor and defendant Fernandez, who would prove to be, in the words of the trial court, "a con man of considerable capability." No purpose is served by our detailing here the exploits of defendant Fernandez over the ensuing two weeks in dealing with plaintiffs, as the fraudulent nature of that transaction is not questioned and raises no issue on this appeal. It will suffice to say that within an hour of his first visit on January 20 he executed a written Agreement of Sale and thereby offered to purchase the entire 85 acres for the full price of $155,000, on terms requiring $30,000 as a down payment and the remaining $125,000 to be paid in five equal annual payments. It further provided the transaction would be conducted through escrow, and that the contract of sale would contain a "standard timber restriction clause" to the effect that no timber on the premises would be cut until at least one-half of the purchase price had been paid. The offer was accepted by plaintiffs the following day.

Within five days following execution of the Agreement of Sale, Publishers was informed by Fernandez that the timberland soon would be available for sale. Within 10 days of executing the Agreement, Fernandez had managed to insinuate himself between plaintiffs and their broker, and in that position nullified the Agreement of Sale, obtained from plaintiffs their deed

[194]

the entire 85 acres, and had executed a "mortgage" that did not contain the timber restriction clause.

By February 4, 1976, Fernandez had recorded the deed (but not the mortgage) between him and the plaintiffs, and had executed with Publishers an earnest money agreement for Publishers to purchase the timberland portion of the 85 acres for $80,000. On the strength of a subsequent title report on February 5, 1976, showing title to the land in Fernandez, Publishers purchased the timberland on February 12, 1976, and recorded its deed thereto the next day. This suit was brought when in late April or May, 1976, plaintiffs read newspaper accounts of criminal and civil charges pending against Fernandez, and then learned that Fernandez had deeded the timberland to Publishers.

Publishers contends our decision here is controlled by the rule in *Webb v. Stewart,* 255 Or 523, 528, 533, 459 P2d 609 (1970), that if a grantor fails to use the escrow device and thereby minimize the risk of a fraudulent use of his deed, and instead places his deed in the hands of his grantee, the grantor will be estopped to deny delivery of the deed and will bear the loss as against a subsequent innocent purchaser or encumbrancer for value. However, as the rule implies, its use here requires Publishers to first qualify as a bona fide purchaser for value, without notice of plaintiffs' equity in the property purchased. As the court held in *Murray v. Wiley,* 169 Or 381, 405, 127 P2d 112, 129 P2d 66 (1942):

"'* * * In suits in equity, the claim of a bona fide purchaser for value is an affirmative defense, which must be pleaded, thereby placing the burden of proof in such cases upon the party relying thereon.'"

Therefore, the threshold issue here is whether Publishers proved itself to be a bona fide purchaser for value in view of the fact that Stevens continued to reside on the land conveyed to Publishers' grantor.

[195]

In *Webb v. Stewart,* as here, the defense to plaintiffs' suit to cancel deeds was that the purchaser from plaintiffs' grantee was a bona fide purchaser for value and without notice. And there, as here, the plaintiff grantor remained in possession of the land throughout the subsequent conveyances. After noting "a division of authority as to whether a grantor's possession puts third persons on inquiry where the grantor has fully executed a deed and permitted it to get into the hands of the grantee," 255 Or at 534, the court held:

> "We think that the ambiguity created by the conflicting statements in our cases * * * should now be resolved, and in resolving it we adopt the rule that grantor's continued possession after the execution of a deed by him puts third persons upon inquiry as to the grantor's interest" 255 Or at 536. (Footnote omitted.)

Under *Webb,* it was Publishers' duty to at least inquire as to who had actual possession of the premises, and the consequence of a failure to make a reasonably diligent inquiry combined with the plaintiffs retaining possession would be to charge Publishers with constructive notice of plaintiffs' claim, *Webb v. Stewart,* 255 Or at 534, and thus vitiate its claim to be a bona fide purchaser. In *Webb,* the plaintiff asked the original grantor about his plans to leave the property and the Supreme Court held that the inquiry did not constitute diligent inquiry.

Here, upon being informed by Fernandez that the timberland would soon be for sale, Publishers proceeded to complete the transaction without going onto the land to inspect it or making an inquiry as to who was in possession. It was established that Robert Booth, the employee who made Publishers' offer to purchase in 1974, reappraised the timberland before Publishers purchased it, but the reappraisal was made in Booth's office from some notes he made during his brief visit to the property nearly two years earlier. The only other evidence of any inquiry by Publishers is that it obtained a title report on the property showing

he deed (but not the mortgage) between plaintiffs and ernandez. However, our Supreme Court has held on veral occasions that the duty of one claiming to be a na fide purchaser of land to inquire into its possession at the time of purchase is not discharged by erely relying on recorded deeds, *see, e.g., Murray v. iley,* 169 Or at 407; or abstracts of title, *Telschow v. uiggle,* 74 Or 105, 109, 145 P 11 (1914); and in *Webb Stewart,* 255 Or at 538, the court stated that it opted the following statement in 1 Merrill, Notice § 1, at 160 (1952):

> " '* * * [T]he most desirable solution of the problem is to regard the grantor's continued possession as a fact provoking inquiry from those subsequently dealing with the land, regardless of its duration. * * * It seems hardly sufficient investigation to content one's self with learning from the records or from some other source that the possessor has purported to part with his title. *Non constat* that he may have gained another in some way. Inquiry from him will involve little effort or expense, and should be required ere one can attain to the ancient and honorable position of a bona fide purchaser.' "

Publishers also contends that, to the extent the cision here rests on plaintiffs' remaining in possession of the property, their claim to the timberland ust fail, as "[t]he property occupied or possessed by evens was farmland [and he] performed no acts by hich Publishers * * * should have been put on notice at plaintiffs' transfer of title to the timberland had en procured by the fraud of [American Savings]." d Publishers conducted a reasonably diligent in- iry into possession of the property, and had that quiry revealed only the facts to which Publishers udes above, we would have occasion to consider the plications of those facts for Publishers' claim of lack notice of plaintiffs' interests in the property. How- er, we have no issue here concerning the sufficiency an inquiry into possession. Rather, this case in- lves the consequences of Publishers' failure to in- ire at all into possession. In the absence of any

inquiry, Publishers is charged "with knowledge of all facts that [it] might have learned had such diligence been exercised," *Murray v. Wiley,* 169 Or at 407. Had Publishers made a diligent inquiry it would likely have learned, as plaintiff Stevens testified, that the boundary between the farmland and the timberland deeded by Fernandez runs directly through Stevens' mobile home. Further inquiry of Stevens regarding the boundary likely would have revealed that plaintiffs claimed a lien as mortgagees on all the property, including the timberland, to which Fernandez showed title of record, that the timberland held by Fernandez was subject to the timber cutting restriction described earlier, and that in purporting to convey the timberland free of such encumbrances and restrictions, Fernandez was defrauding plaintiffs.

We therefore conclude that Publishers is not a bona fide purchaser and is not entitled to the protection which the law accords to one with that status. Rescission was therefore properly ordered.[3]

Affirmed.

---

[3] Alternative equitable remedies have not been requested.